JASON W. HARDIN (Utah Bar Number 08793)
PHILIP D. DRACHT (Utah Bar Number 11561)
FABIAN & CLENDENIN
215 South State Street, Suite 1200
Salt Lake City, Utah 84111-2323
Telephone (801) 531-8900
Facsimile (801) 596-2814
jhardin@fabianlaw.com
pdracht@fabianlaw.com

SARAH J. BECK (Utah Bar Number 08231)
299 South Main Street, 13th Floor
Salt Lake City, Utah 84111-1919
Telephone (801) 649-3805
Facsimile (801) 649-4749
sarah.beck@dazzlesmile.com

Attorneys for dazzlesmile, llc, and Optimal Science, LLC

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DAZZLESMILE, LLC, a Utah limited liability company, and OPTIMAL HEALTH SCIENCE, LLC, a Utah limited liability company,<br><br>     Plaintiffs,<br><br>vs.<br><br>EPIC ADVERTISING, INC., a purported Delaware corporation AKA AZOOGLE.COM, INC., AKA AZOOGLEADS US INC., and AKA EPIC/AZOOGLE; AZOOGLE.COM, INC., a Delaware corporation; AZOOGLEADS US, INC., a non-public Delaware corporation; FAREND SERVICES LIMITED, a Cyprus registered company; JESSE DAVID WILLMS, an individual; 1021018 ALBERTA LTD, a Numbered Alberta Canadian Corporation AKA JUST THINK MEDIA; ATLAST HOLDINGS, INC., a Colorado corporation, d/b/a ATLAST FULFILLMENT; NEVERBLUE MEDIA, INC., a Canadian corporation; GOOGLE, INC., a | **Case No.: 2:09-CV-1043**<br><br>**FIRST AMENDED VERIFIED COMPLAINT:**<br><br>**1. FEDERAL UNFAIR COMPETITION (15 U.S.C. §1125(a))**<br>**2. FEDERAL TRADE NAME INFRINGEMENT (15 U.S.C. §1125(a))**<br>**3. FEDERAL TRADEMARK AND TRADE NAME DILUTION (15 U.S.C. §1125(c))**<br>**4. FEDERAL CYBER PIRACY (15 U.S.C. §1125(d))**<br>**5. FALSE PATENT MARKING (U.S.C. §292)**<br>**6. COMMON LAW INFRINGEMENT**<br>**7. CONTRIBUTORY INFRINGEMENT**<br>**8. VICARIOUS INFRINGEMENT**<br>**9. STATE UNFAIR COMPETITION** |

Delaware corporation, YAHOO! INC., a
Delaware corporation; MICROSOFT
CORPORATION, a Washington corporation;
and DOES 1-10,

      Defendants.

**AND UNFAIR OR DECEPTIVE
BUSINESS PRACTICES**
10. **STATE CONSUMER PROTECTION**
11. **MISAPPROPRIATION**
12. **CIVIL CONSPIRACY**
13. **FRAUD**
14. **FEDERAL RACKETEERING
INFLUENCED AND CORRUPT
PRACTICES (18 U.S.C. §1964)**

<u>**DEMAND FOR JURY TRIAL**</u>

**Magistrate Judge Paul M. Warner**

Plaintiffs dazzlesmile, llc ("**dazzlesmile**") and Optimal Health Science, LLC ("**Optimal**") complain against Defendants: Epic Advertising, Inc., AKA Azoogle.com, Inc., AKA AzoogleAds US, Inc., AKA Epic/Azoogle; Azoogle.com, Inc.; AzoogleAds US, Inc.; Farend Services Limited ("**Farend**"); Jesse David Willms ("**Jesse Willms**"); Just Think Media; 1021018 Alberta Ltd.; AtLast Holdings, Inc. d/b/a AtLast Fulfillment; Neverblue Media, Inc.; Google, Inc., ("**Google**"); Yahoo! Inc., ("**Yahoo!**"); Microsoft Corporation, ("**Microsoft**"); and Does 1-10, as follows:

### JURISDICTION AND VENUE

1.      This Court has subject-matter jurisdiction over the claims in this action, which arise, in part, under 15 U.S.C. §1051 *et seq.* (the "**Lanham Act**"), 18 U.S.C. §1964 ("**RICO**"), 35 U.S.C. §292, 28 U.S.C. §1338 and 28 U.S.C. §1331, for violations of federal law relating to unfair competition and false advertising, trade name infringement, trademark and trade name dilution, cyber piracy, false patent marking and racketeering.

2.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a) over

Plaintiffs' Utah state law claims as those claims are so related to the federal claims that they

form part of the same case or controversy and derive from a common nucleus of operative facts.

3.     The Court also has subject matter jurisdiction over this action under 28 U.S.C.

§1332 on the basis of the diversity of citizenship of the parties and because the amount in

controversy greatly exceeds $75,000.

4.     Venue is proper in the United States District Court, District of Utah, pursuant to

28 U.S.C. §1391.  The infringing advertisements and products that are the subject of this First

Amended Verified Complaint were advertised and distributed or offered for distribution in Utah.

Plaintiffs were damaged in Utah and the claims alleged in this action arose in Utah.

5.     All of the Defendants are subject to the personal jurisdiction of this Court.

Defendants conduct business in the United States and Utah including entering into ongoing

contractual relationships with United States and Utah residents and purposely directing

substantial activities at residents of the United States and Utah by means of the internet

advertisements described herein and by selling and mailing various teeth whitening products to

United States and Utah residents.  This lawsuit arises out of or relates to those activities.

**PARTIES AND INTRODUCTION**

6.     This case involves mass marketplace and consumer confusion and deception

created by Defendants in the advertising and sale of teeth whitening products, many of which are

counterfeits and knock-offs of dazzlesmile products.

7.     Optimal is a Utah limited liability company with its headquarters in Salt Lake

City, Utah.

8.      dazzlesmile is also a Utah limited liability company, with its headquarters in Salt Lake City, Utah.  dazzlesmile manufactures and distributes the dazzlesmile™ "on the go" teeth whitening system.  dazzlesmile is a wholly-owned subsidiary of Optimal.

9.      Optimal and dazzlesmile jointly own the trademark "dazzlesmile™" (the "**dazzlesmile mark**").

10.      The dazzlesmile mark and trade name have been used in association with the sale of teeth whitening products since at least January 11, 2005.

11.      Defendant Epic Advertising, Inc. is purportedly a registered Delaware corporation also known as Azoogle.com, Inc., AzoogleAds US, Inc., and Epic/Azoogle.  Epic Advertising, Inc. is in the business of internet and search engine marketing.

12.      Defendant AzoogleAds US, Inc. is a non-public Delaware corporation owned entirely by Defendant Azoogle.com, Inc., which is a Delaware corporation.  AzoogleAds US, Inc. and Azoogle.com, Inc. are currently doing business throughout the United States, including in Utah, under the name "Epic Advertising," "Epic Advertising, Inc." or "Epic/Azoogle."

13.      On information and belief, "Epic Advertising" came about as part of a re-branding to downplay and hide that it is in fact "Azoogle," primarily because Azoogle is widely known as having been the target of multiple investigations and lawsuits regarding SPAM emails and entering into a settlement with the Florida Attorney General regarding alleged ads that offered "free" ringtones but instead tricked consumers into signing up for paid ringtone subscriptions.

14.      Hereinafter, Defendants Epic Advertising, Inc., AzoogleAds US, Inc., and Azoogle.com, Inc. are collectively referred to as "**Epic**."

15.     Defendant Jesse Willms is now, and at all times mentioned in the Complaint has been, an individual residing in Canada with his residence at 527, 52328 Range Road 233, Sherwood Park, Alberta, Canada and principal place of business in Alberta, Canada.  Jesse Willms, however, conducts significant business on the internet throughout the United States, including in Utah.

16.     Defendant Jesse Willms has been the target of multiple investigations and lawsuits regarding unfair competition, false advertising and deceptive business practices, trademark and copyright infringement, product counterfeiting, and trafficking in counterfeited products.  Jesse Willms is known to have entered into at least three substantial settlements to resolve those charges.

17.     Defendant 1021018 Alberta Ltd. ("**1021018**") is a Numbered Alberta Canadian Corporation.  Defendant Jesse Willms is a director and 100% shareholder of 1021018 and personally participated in and had the right and ability to supervise, direct and control the wrongful conduct by 1021018, as alleged in this First Amended Verified Complaint and derived direct financial benefit from such conduct.

18.     Additionally, 1028018 registered and owns the trade name "Just Think Media" and does business as "Just Think Media."  Willms and 1028018 use "Just Think Media," (http://justthinkmedia.com) as an internet marketing company that purportedly creates products and then markets those products using internet advertising practices including the use of affiliate advertising, web sites, banner ads, email marketing and contextual advertising.  Jesse Willms personally participates in and had the right and ability to supervise, direct and control the wrongful conduct by "Just Think Media" as alleged in this First Amended Verified Complaint

5

and derived direct financial benefit from such conduct.

19.    Defendant Farend is a company registered in Cyprus that purports to sell teeth whitening products.  Its only shareholder of record is Nomilink Management, Ltd., another company registered in Cyprus.  Farend also operates the following post office box in Des Moines, Iowa:  Post Office Box 10276, Des Moines, Iowa  50381 and also lists 22100 East 26th Avenue, #100, Aurora, Colorado 80019 as its contact address on at least one of its websites.

20.    On information and belief, Defendants Jesse Willms, 1021018 and Just Think Media use Defendant Farend as a dba to be a public front address (although it is located in Cyprus) in order to sell the teeth whitening products and other products purportedly developed by Just Think Media.

21.    On information and belief, Defendant Jesse Willms personally participated in and had the right and ability to supervise, direct and control the wrongful conduct by Farend, 1021018, and Just Think Media, as alleged in this First Amended Verified Complaint and derived direct financial benefit from such conduct.

22.    Upon information and belief, at all times Defendants Jesse Willms, Farend and 1021018 were the principals, agents, affiliates, partners, co-conspirators or alter-egos of each other, and each acted within the course, scope and authority of such relationships and ignored corporate formalities so that, as a result, Willms, Farend and 1021018 are in fact alter egos of one another and are jointly and severally liable for the acts alleged herein.  Hereinafter, Willms, Farend and 1021018 are collectively referred to as the "**Willms Defendants.**"

23.    Defendant AtLast Holdings, Inc. ("**AtLast**") is a Colorado corporation with its corporate headquarters and principal place of business located at 22100 East 26th Avenue, #100,

24.    Defendant Neverblue Media, Inc. ("**Neverblue**") is a Canadian corporation with its headquarters in Victoria, British Columbia, Canada.  Neverblue is a wholly owned subsidiary of Vertrue, Inc., which is a wholly owned subsidiary of Velo Holdings, Inc.  Similar to Epic, Neverblue is an internet marketing company that utilizes a network of affiliates in its online advertising and marketing campaigns.

25.    Defendant Google, Inc. is a publicly held corporation that was incorporated in California in September 1998 and reincorporated in Delaware in August 2003.  Its headquarters are located at 1600 Amphitheatre Parkway, Mountain View, California 94043.  Google, Inc. owns or controls the website www.google.com.

26.    Defendant Yahoo! Inc. is a publicly held corporation that is incorporated in Delaware.  Its headquarters are located at 701 First Avenue, Sunnyvale, California 94089.  Yahoo! Inc. owns or controls the website www.yahoo.com.

27.    Defendant Microsoft Corporation is a publicly held company that is incorporated in Washington.  Its headquarters are at One Microsoft Way, Redmond, WA 98052.  Microsoft owns or controls the websites www.msn.com and www.bing.com.

28.    The Doe defendants are unknown at this time, but are believed to be, among other persons or entities, certain affiliates or publishers of Epic, Neverblue and/or Just Think Media, additional entities, affiliates or businesses controlled or owned by Jesse Willms, additional

29.     Plaintiffs seek damages and injunctive relief as further described below preventing Defendants from engaging in any further violation of Plaintiffs' rights.

## GENERAL ALLEGATIONS

### DAZZLESMILE AND THE TRADEMARK AT ISSUE

30.     dazzlesmile is an internationally known teeth whitening system.  The system was first introduced to the general public in October 1996, during the course of a clinical study conducted by F. Richard Austin, DDS, a cosmetic dentist, and Blaine D. Austin, DDS, MS, a maxillofacial surgeon.  Their research study entitled "*Clinical Evaluation of In Vivo Effects of Orally Administered Carbamide Peroxide Bleaching Agent Dispensed in Tablet Form*" ultimately culminated with the issuance of United States patents 5,785,957 and 6,149,211 on July 28, 1998, and November 21, 2000.

31.     The dazzlesmile teeth whitening system is comprised of teeth bleaching and dental hygiene products, currently consisting of orally administered mint whitening tablets, whitening toothpaste and a mouth wash.  The clinical research described in the preceding paragraph demonstrated the efficacy of dazzlesmile — and dictated that any dazzlesmile products containing carbamide peroxide in the U.S. must be registered with the United States Food and Drug Administration ("**FDA**") and manufactured in an FDA-approved facility. dazzlesmile is considered an Over-the-Counter ("**OTC**") drug and is required to be so labeled with specific drug facts.

8

32.     Official and legitimate dazzlesmile products fully comply with all governmental regulations relating to their manufacture, packaging and labeling.  Proper labeling of OTC drugs is necessary to prevent harm to consumers, such as overdose, and appropriate labeling of OTC drugs is on the same scale of importance afforded prescription medications.

33.     The dazzlesmile mark and name were first conceived by Target Interact US LLC ("**Target Interact**") during 2004, after undertaking a market research and name investigation that carefully compared the dazzlesmile mark and name against any similar trade names, trade-styles and common law or registered trademarks.  No conflicts were found or otherwise arose during that process, and the dazzlesmile mark and name were first used beginning January 11, 2005.  Since that day, the dazzlesmile name and dazzlesmile™ stylistic mark — all lowercase Royal Blue Avant Garde font, followed by the "™" superscript designation — has been continuously asserted and claimed, initially by Target Interact, and then, unbroken by time, dazzlesmile and Optimal.

34.     In order to provide constructive public notice and begin the promotion of the dazzlesmile mark and name, on March 30, 2005, the first in a series of steps was taken by Target Interact to secure the dazzlesmile mark and name through its registration with the Internet Corporation for Assigned Names and Numbers, and by propagation of the domain www.dazzlesmile.com.  The dazzlesmile domain and attendant website have been in continuous, uninterrupted operation since March 30, 2005.

35.     On August 22, 2005, Target Interact also filed to register the dazzlesmile mark (Application Serial Number 78697796) with the United States Patent and Trademark Office, and asserted both first use and prior use in commerce of the mark, before all others.

9

36.    However, another company, Dazzlesmiles of New York, LLC[1], 170 East 61st Street, New York, New York 10021, had previously filed an *intent to use* registration of the simple name "DAZZLESMILE" (all uppercase) in the category of "dental prosthetic devices fabricated in a dental lab" on March 5, 2005.  Neither the *intent to use* registration nor category[2] filed within or the minimal geographic reach (limited to New York City) of that company offended dazzlesmile at the time, since the first use of the dazzlesmile mark as a common law trademark and trade name was January 11, 2005, and its first use in commerce began on that same date.

37.    On September 13, 2005, dazzlesmile was formed as a Utah limited liability company.  dazzlesmile also entered into an "Agreement to Commercialize Teeth Whitening Formula(s) and Products" with Custom Care Products, Inc., the owner of the US patents detailed above.  That Agreement grants to dazzlesmile a worldwide manufacturing and marketing license to exploit the formulas and products covered by the Agreement, and, by virtue of the Patent License, to be protected under United States patents 5,785,957 and 6,149,211.

38.    On September 25, 2007, Target Interact transferred all rights, title and interest that it had in the dazzlesmile mark and name, along with all goodwill accrued and associated product, to dazzlesmile and Optimal, jointly and severally.

39.    The prosecution of the dazzlesmile mark continues to the present.

---

[1] Dazzlesmiles of New York, LLC is <u>not</u> related to any of the parties.

[2] dazzlesmile™ is a teeth whitening system consisting of slow-release carbamide peroxide mint tablets, whitening toothpaste and a mouth wash, whereas DAZZLESMILE of New York product has been recorded with the USPTO to be "dental prosthetic devices fabricated in a dental lab."

**DAZZLESMILE'S BUSINESS AND USE OF THE DAZZLESMILE MARK**

40.     dazzlesmile packages and sells dazzlesmile teeth whitening products throughout the United States.  As described above, this is done primarily through its website, www.dazzlesmile.com, which it owns and operates.  dazzlesmile has devoted significant time and expense to the development of its website, in order to provide a website that is informative, aesthetically pleasing and user-friendly.

41.     The dazzlesmile teeth whitening system has been marketed through long-form radio informational programs, print media, the Internet and in boutique retail settings.

42.     dazzlesmile has spent substantial amounts of money advertising and promoting its teeth whitening solutions on search portal websites such as Google and Yahoo!.  To advertise through those search portal websites, dazzlesmile has purchased certain keywords, such that when a user searches for those keywords (such as "dazzlesmile" or "dazzle smile") an advertisement and link for dazzlesmile's website will be prominently displayed on the search results page.

43.     Optimal has provided, and continues to provide, strategic oversight for dazzlesmile, as well as for other subsidiaries.

**EPIC'S MARKETING CAMPAIGN FOR DAZZLESMILE**

44.     On January 26, 2009, Carson Parmalee ("**Parmalee**"), a Sales Manager for Epic contacted Roger LeFevre (**"LeFevre"**), the Chief Executive Officer of Optimal and dazzlesmile.

45.     Parmalee represented and held himself out to be acting for Defendant Epic Advertising:  he claimed to be a Sales Manager for Epic Advertising in New York City, he had

11

an Epic Advertising email address, and he provided LeFevre with an "Epic Advertising Quick

Reference Guide" and other materials.

46.     The materials provided by Paramelee also said that "AzoogleAds" was a "division

of Epic Advertising."

47.     In materials provided by Parmalee to LeFevre on January 26, 2009, Epic

represented:

 a. that it had a "network of 40,000+ Web/Display, E-mail and Search

Publishers" which allowed Epic to deliver "Cost Per Acquisition" ("**CPA**") or pay-for-

performance advertising and solutions for its clients;

 b. that it would "protect your brand and your ads like no other ad network

can via our in-house marketing compliance department";

 c. that it was "the unmatched leader in Data Protection, Fraud Prevention

and Online Marketing Standards";

 d. that it had "an integrity assurance department that upholds the highest

standards for traffic and lead quality";

 e. that its "[p]ublishers recognize that the highest payouts go to those that

deliver the highest quality traffic";

 f. that "Epic Advertising's Integrity Assurance group enables top tier

Advertisers to obtain quality traffic and leads via our best of breed network of

Publishers";

 g. that Epic's policies "prohibit[] link farms, fraud, websites with

objectionable content, and those that spawn exit pop-ups";

      h.     that Epic has "staff that proactively checks our offers for compliance to our published standards";

      i.     that once Epic "identified and confirmed a policy violation," it would redress those issues through a number methods, such as "cut[ting] that Publisher's links, recoup[ing] commissions, and/or suspend[ing] or terminat[ing] a Publisher's account";

      j.     that its "Search Policy prohibits Publishers from engaging in trademark infringement, forbids them from using potentially misleading terms (e.g., "Free") or utilizing certain images . . . as part of their search marketing efforts";

      k.     that Epic's policies "bar[] Publishers from using prohibited keywords in Meta tags, page copy or within URLs"; and

      l.     that Epic "proactively monitors search campaigns to ensure compliance with" its policies.

48.     Epic made the aforementioned representations, as well as many other similar representations, orally and in writing to Plaintiffs to induce them to hire Epic to run a dazzlesmile advertising campaign.

49.     Indeed, on January 26, 2009, Parmalee expressly stated that he was soliciting Optimal as an advertising client for Epic.

50.     Parmalee told LeFevre that one of Epic's current clients, a producer of teeth whitening products allegedly similar to that of dazzlesmile, had experienced great success with Epic's advertising efforts.

51.     On information and belief, the aforementioned client of Epic's was Farend, Jesse Willms or another of Willms' entities.

52.    Parmalee pushed a continuity offer on LeFevre, with which Epic was "having a lot of success."  Parmalee explained that a continuity offer meant that a customer would be offered a free trial or sample for a very minimal cost and, that, after "a 14-30 day free trial period, the customer [would] then [be] billed for the full amount of the product" and continue to receive future shipments of the product billed at full price.

53.    On information and belief, Epic encouraged, and still encourages its clients to adopt the continuity offer model because, coupled with Epic's 15 day payment remittance requirement for its clients, it generates massive profits for Epic with little potential downside.  In particular, the 14-30 day free trial period ensures most customers will not complain or cancel their orders until after Epic's clients have already submitted payment to Epic for those orders.  If the customers cancel after that point in time, Epic's client would take the loss (i.e., what it already paid Epic plus the value of its products sent to the consumer, unless returned, less the minimal shipping costs received from the consumer on the front end).

54.    Parmalee directed LeFevre to have Optimal do precisely what Epic's web advertising team dictated in terms of their advertising and marketing strategies and tactics.

55.    If Plaintiffs followed Epic's direction, Parmalee represented that Plaintiffs could expect to see hundreds and likely thousands of daily orders for dazzlesmile products, and thus realize large profits.  Parmalee assured LeFevre that many of Epic's other clients were achieving these results.

56.    Parmalee then suggested a face-to-face meeting, which ultimately occurred at Epic's New York City office on February 12, 2009.  In addition to Parmalee and LeFevre, Epic's Vice President, Marc Porcelli, attended the meeting.  The meeting was followed by a lunch

14

outside the Epic office that included several additional Epic personnel who were described to

LeFevre as those being responsible for creating ads for clients and managing client promotional

campaigns.

57.    Parmalee and other Epic representatives recognized and were impressed that

dazzlesmile had an actual customer service department.  LeFevre did not appreciate the

significance of this recognition until later.

58.    In good faith and reasonable reliance on the representations of Parmalee and other

Epic agents, Optimal agreed on April 9, 2009 to run an advertising campaign through Epic in

relation to dazzlesmile's products.

59.    In running an internet advertising campaign, Epic purported, and still purports, to

use "publishers" or "affiliates" in order to propagate internet ads for an advertising campaign.

Those publishers or affiliates creates additional web pages that contain testimonials, customer

reviews, blog postings, and other materials purportedly designed to convince consumers to sign

up for various products.  Those publishers and affiliates are agents or employees of Epic and

operate under the control of Epic and on behalf of Epic in return for payment by Epic.

60.    For the dazzlesmile advertising campaign, Optimal would compensate Epic based

on a CPA basis.  In other words, Optimal agreed to pay Epic:  (1) when a potential customer

clicked on an Epic advertised link that was promulgated by a publisher or affiliate of Epic and

was then directed to a dazzlesmile "landing page," and (2) that potential customer signed up and

purchased dazzlesmile products.

61.    Despite all of the prior representations and materials saying that Optimal was

dealing with Epic Advertising, the actual agreement appeared to have been with, and was signed

on behalf of, Azoogle.com, Inc., 60 Columbia Way, Suite #310, Markham, Ontario, Canada, although the agreement also referenced "AzoogleAds" and "Epic Advertising."

62.     Additional documents from Epic relating to the dazzlesmile campaign also referred numerous times to "Epic/Azoogle."

63.     Only Optimal had an agreement with Azoogle.com, Inc.  dazzlesmile never entered into any agreement with Azoogle.com, Inc. or otherwise with Epic.

64.     Subsequently, Epic or its agents created all advertisements and internet landing pages regarding dazzlesmile products.  Epic was heavily involved in designing the dazzlesmile landing page as well as in setting the prices and sales strategies of online sales of dazzlesmile products.

65.     Not surprisingly, Epic said that a CPA at or above $40 was the "most important" aspect of the pricing.  This would be paid by Optimal to Epic after each order was placed.

66.     But simultaneously, Epic also encouraged Optimal to set a "free trial" with a low shipping cost around $3.99 per order, which Epic said was the second most important pricing component, no doubt because it was meant to stimulate sales and thus payment of CPAs to Epic.

67.     Epic also encouraged Optimal to set a high "bill rate" to be charged later to the consumers "so you are sure to make your money back with the second billing cycle."

68.     In addition, each advertisement and internet landing page contained a particular "sales tracking firing pixel" entitled "AZJMP" – a code that identifies that Epic created the ad that led to the sales transaction (the **"Epic firing pixel"**).

69.     Epic used the Epic firing pixel to keep track of CPAs associated with a particular advertisement and advertiser for purposes of collecting payment for those orders, as well as to

identify the publisher or affiliate who brought the customer to the landing page for purposes of paying that publisher or affiliate for doing so.

70.    Epic was and is intimately familiar with its various publishers and affiliates. Epic works closely with its publishers and affiliates in developing an advertising campaign, just as it did with the dazzlesmile campaign. From its publishers and affiliates, Epic seeks strategic guidance and guidance regarding what advertising tactics and practices it and its clients should use in a given advertising campaign.

71.    Ultimately, Optimal agreed to pay Epic $43 per order generated by Epic's advertising campaign. That $43 was deemed to have been earned when an order fired via an Epic firing pixel, subject to a fifteen (15) day payment term.

72.    In the end and as a condition of Epic running the dazzlesmile internet advertising campaign, Epic mandated that Optimal have dazzlesmile run a promotion where potential customers could sign up to receive free product and only have to pay shipping and handling. Epic then required that as a condition for receiving this free product, customers tacitly agree to receive continued shipments of the product at the full price through the "terms and conditions" page of the www.dazzlesmile.com website.

73.    Optimal told Epic that it would not say "free" in connection with the dazzlesmile promotion as the customers were obligated to pay some money. Epic agreed to that condition, but mandated that the terms and conditions for the auto-ship for additional product be placed in a specific place on the landing page (in lightly grayed, fine print text below and/or out-of-sight of the credit card input fields) or on a separate page on dazzlesmile's home page, found only by a link at the bottom of the trial offer landing page(s).

74.    As noted above, Epic designed and created dazzlesmile's landing pages, including the terms and conditions for the promotional marketing campaign.  Epic saw, changed and approved, and was extremely familiar with, the dazzlesmile landing pages.  And there is no question that Epic saw on numerous occasions, and was extremely familiar with, the dazzlesmile mark and name.

75.    Epic began advertising in relation to dazzlesmile products on May 1, 2009. Within one week, dazzlesmile received over 2,500 orders from Epic's advertising campaign. Over one four-hour period alone on May 7, 2009, Epic's dazzlesmile ad campaign generated approximately 2,000 orders.

76.    Epic admitted that a majority, if not all, of the orders received in May 2009 were generated by a single publisher, as opposed to the tens of thousands of publishers represented to have been available in its network.

77.    Late in the evening on May 7, 2009, Optimal expressed concern to Epic regarding this rapid influx of orders, but Epic stated that "it fe[lt] strongly about the quality of those orders" and that they would "have much more information for [Optimal] in the morning."

78.    But the next day following the large inflow of dazzlesmile orders, Parmalee and Marc Porcelli instead called LeFevre and pressured him to immediately pay for all of the dazzlesmile orders received to date, which amounted to about $100,000 owed at the time.  In doing so, Parmalee and Porcelli disregarded the supposedly agreed upon fifteen (15) day payment term.

79.    On information and belief, Parmalee and Porcelli demanded immediate payment of the orders on May 8, 2009 because they knew and understood that the massive amount of

orders generated the previous night and week were actually, or likely would be, of very low quality (i.e., obtained through deceptive or otherwise misleading tactics) and result in numerous customer cancellations and returns, which they knew would make Plaintiffs unhappy given their prior representations and which they knew would make the dazzlesmile campaign extremely unprofitable for Plaintiffs if Epic was actually paid the $43 per CPA.

80.     As a result of this stunning number of orders, Optimal and dazzlesmile began looking closely at the Epic advertisements for dazzlesmile products and found that Epic's publishers and affiliates were sending SPAM email, posting fake consumer blogs, and placing a variety of other false and deceptive advertisements on the internet.

81.     The Epic affiliates or publishers were also promoting other teeth whitening products in the same advertisements as dazzlesmile products. The advertisements were posed as a one + two combination product (the advertiser's copy read: "I thought I didn't have enough money to use two different products at once but I went back on the net, did some more research and found some special offers that combined two products - Whitening Now and Dazzle Smile - a completely free trial"). In addition to mentioning a "free trial," the other teeth whitening product used the same terms and conditions that Epic mandated. Thus, customers who signed up as a result of this promotion received <u>two</u> auto-shipments and <u>two</u> recurring charges on their credit cards from <u>two</u> different companies. Neither dazzlesmile nor Optimal had ever authorized such dual or "one and two" marketing campaigns.

82.     Plaintiffs notified Epic of this simultaneous promotion and demanded that they stop it. Epic admitted that one of its publishers was running the simultaneous advertisements of dazzlesmile and a competitor.

83.    On information and belief, the other teeth whitening products being promoted simultaneously by Epic and its publishers and affiliates were from the Willms Defendants or one of their affiliates or related entities.

84.    Plaintiffs never agreed, either expressly or implicitly, to allow Epic to utilize the dazzlesmile mark or name in conjunction with any joint advertising with other teeth whitening products or other companies.

85.    By May 12, 2009, a mere five days after the massive influx of orders, numerous consumers who had purchased dazzlesmile products through the Epic advertising campaign began disputing their credit card charges with dazzlesmile and calling dazzlesmile to complain about reoccurring charges on their credit cards and automatically shipped product.  At that time, dazzlesmile customer service was receiving 50-75 calls per day.  Optimal notified Epic of these cancellations and calls.

86.    When pressed, Epic admitted that the single publisher it had used for the dazzlesmile advertisements had a "smash and grab mentality."  This publisher had generated the massive influx of orders, and its tactics led to the high cancellation rate.  Epic, however, did nothing to stop the publisher's "smash and grab" tactics and instead allowed, and thus agreed with, such tactics.

87.    Optimal again confronted Epic over the issues of deceptive marketing practices and the apparent joint advertising campaign as well as the charge-backs and customer complaints it was experiencing.  Plaintiffs operated legitimate businesses and demanded that a potential customer be required, among other things, to click on an "I Agree" button along with a description of the terms and conditions of the sale that provided for the auto shipment

permission.  Plaintiffs hoped such efforts would reduce consumer confusion, result in sales only

to consumers who understood and appreciated the arrangement and allow Plaintiffs to comply

with the requirements of Visa, MasterCard, Discover and American Express for reversing

attempted charge-backs.

88.    Despite the obvious benefit of reducing customer confusion and dissatisfaction,

Epic told Optimal that including an "I Agree" button on the landing page was unacceptable.

Instead, Epic pressured Optimal multiple times to "revert back (100%) to the old pages."

89.    And despite its purported policies to the contrary, Epic also repeatedly pushed

dazzlesmile to include an exit pop-up window on its landing page, which would pop-up when a

consumer attempted to leave or close the page and ask "are you sure you want to navigate away

from this page" – while making another special offer.

90.    Epic also informed Plaintiffs that the publisher who was responsible for bringing

in most of the customers as described above refused to run additional dazzlesmile offers.

91.    In short, Optimal tried to legitimize Epic's dazzlesmile advertising campaign, but

Epic flatly rejected the idea because Epic was benefiting by getting paid $43 for each order,

regardless of whether customers were being misled or not.  In other words, Epic wanted to, and

wants to, encourage, and thus profit from, consumer deception and confusion.

92.    Moreover, the only way Plaintiffs could have continued the dazzlesmile

advertising campaign with Epic would have been to succumb to Epic's and its publishers'

demands for more deceptive advertising techniques.

93.    Plaintiffs did not agree with these practices and stopped the Epic advertising

campaign and terminated their relationship with Epic on June 29, 2009.

94.     At that time, Epic represented that it understood the dazzlesmile campaign had stopped and that no further dazzlesmile advertising campaign would be run.

95.     Yet, within a short period of time, the Epic dazzlesmile advertisement campaign began anew, but this time without the permission, knowledge or authorization of Optimal or dazzlesmile.

**THE WILLMS DEFENDANTS STEAL DAZZLESMILE'S MARK, NAME AND WEBSITE TO SELL COMPETING TEETH WHITENING PRODUCTS**

96.     On May 27, 2009 – not long after Plaintiffs expressed concerns to Epic over the deceptive practices and consumer complaints regarding the dazzlesmile advertising campaign and began requesting that the campaign be legitimized – Farend was created and registered with the Department of Registrar of Companies and Official Receiver of the Republic of Cyprus.

97.     On information and belief, Jesse Willms, 1021018 and Just Think Media created Farend simply to be a new public front for selling teeth whitening products developed by Just Think Media or some other affiliate or entity controlled by Jesse Willms.

98.     On or before July 29, 2009 but after Optimal cancelled Epic's dazzlesmile advertising campaign, the Willms Defendants registered and began to use at least the following websites as landing pages from which they marketed and sold infringing and counterfeit teeth whitening products:  http://www.dazzlesmilepro.com; http://www.dazzlesmilepure.com; http://www.dazzlesmilenow.com; and http://www.dazzlesmilepremium.com (the "**Pirated Landing Pages**").

99.     Shortly after the creation of the Pirated Landing Pages and continuing to the present, a slew of pages advertising and marketing the infringing and counterfeit teeth whitening

products of the Willms Defendants and redirecting consumers to the Pirated Landing Pages or

other pages of the Willms Defendants were created and used by various affiliates of the Willms

Defendants, Epic, Neverblue and possibly others, for instance at

http://www.freedazzlesmile.com; http://www.dazzlesmilereviews.com;

http://www.celebritydazzlesmile.com; http://www.dazzlesmilefreetrial.com;

http://www.dazzlesmilepro.org; http://www.dazzlesmilefreetrial.info;

http://www.dazzlesmile.org; http://www.dazzlesmile.biz; http://www.dazzlesmile.info; and

http://www.dazzlesmile.net (the "**Pirated Marketing Sites**").

     100.    Many of the Pirated Landing Pages and Pirated Marketing Sites are, or were,

hosted by, possibly among others, Rackspace.com in San Antonio, Texas and registered by

Moniker Online Services, Inc., a masking company used to conceal the true owner's identity.

     101.    Most, if not all, of the Pirated Landing Pages and Pirated Marketing Sites

contained a privacy policy that expressly referred web users to Defendant Farend and sometimes

listed its address as being in Cyprus.

     102.    Farend is, or was until filing of the original Verified Complaint, also listed on the

contact information for the websites http://www.premiumwhitepro.com and

http://www.premiumwhitemax.com, websites also purporting to sell teeth whitening products.

One contact address used for Farend is 22100 East, 26th Ave

Aurora, CO  80019, which is the address for AtLast Fulfillment, a product fulfillment center on

the outskirts of Denver.

     103.    The Willms Defendants are also affiliates, marketers, suppliers, manufacturers or

importers of certain of the infringing products via numerous websites, including, but not limited

to, http://www.premiumwhitepro.com and http://www.premiumwhitemax.com/ and the Pirated

Landing Pages.

104.    As an example, the primary teeth whitening product being sold by the Willms

Defendants on the Pirated Landing Pages and on http://www.premiumwhitepro.com and

http://www.premiumwhitemax.com is, or was for many months, a teeth whitening gel dispensed

in a pen shaped applicator.

105.    Not coincidentally, Just Think Media advertised over the summer of 2009, and

continues to advertise to this day, that one of its "top performing offers" is and was a teeth

whitening product and that Just Think Media "commissioned the creation of a teeth-whitening

gel that could be applied via pen shaped applicator."

106.    Furthermore, the Willms Defendants advertise, or advertised for many months,

the following pen shaped gel applicator on their website http://www.premiumwhitepro.com:



107.     Similarly, the Willms Defendants advertise, or advertised for many months, the
following pen shaped gel applicator on another of their websites
http://www.premiumwhitemax.com:



108.     The pen shaped gel applicators with teeth whitening materials are available for
purchasing in bulk at extremely low cost from Chinese producers.  The applicators purchased
overseas do not contain any labeling and do not appear to have been manufactured in accordance
with FDA guidelines.

109.     On information and belief, AtLast and/or the Willms Defendants, or one of them,
created labels that said "DazzleSmile" and "DazzleSmilePro" or similar and affixed those labels
to their own pen applicators of teeth whitening gels as well as to letters and stationary
accompanying those products.  These were infringing and counterfeit labels and were not, and

never have been, authorized in any way by Plaintiffs.

110.    For example, the ad below – which was not created or authorized in any way by Plaintiffs – shows a "DazzleSmile" ad for a pen shaped gel applicator with the label "Dazzle Smile."



111.    Moreover, Plaintiffs have received numerous returned products from disgruntled consumers that clearly originated from AtLast and/or the Willms Defendants that contained pen shaped gel applicators with counterfeit labels and packaging.  For example, the picture below shows a returned package that contained two pen shaped gel applicators – one with a "DazzleWhite" label and the other with the counterfeit "DazzleSmile" box and label:



112.    Many of the of the returned products from disgruntled consumers that contained teeth whitening products, letters or other stationary with the infringing and counterfeit dazzlesmile mark or name that have been received by Plaintiffs also bore the name "Just Think" or "Just Think Media" and had a return address on the original packaging of 22100 East 26th Avenue, #100, Aurora, Colorado 80019, which is the principal place of business and corporate headquarters for AtLast as well as a contact address for Farend on at least one its websites.

113.    On information and belief, AtLast "fulfills" many of the orders for teeth whitening products sold by the Willms Defendants to consumers on the internet.  This means:

a.    AtLast creates, and has created or printed, many of the letters and stationary that accompany, or accompanied, the Willms Defendants teeth whitening

27

products when shipped to thousands of consumers throughout the United States and elsewhere;

   b.    AtLast purchases and imports, or purchased and imported for many months, generic pen shaped gel applicators and other teeth whitening products from overseas, creates various labels for such products for the Willms Defendants, including, but not limited to, labels saying, "DazzleSmile" and "DazzleSmilePro," and/or affixes the labels to the generic applicators;

   c.    AtLast creates, purchases or imports, or created, purchased or imported for many months, the boxes and other packaging for the pen shaped gel applicators and other teeth whitening products described above;

   d.    AtLast ships, and shipped for many months, teeth whitening products, stationary, letters and packaging, many of which contained the dazzlesmile name or mark, to many consumers throughout the United States and elsewhere via U.S. mail after an order is placed on one of the Willms Defendants websites;

   e.    AtLast handles, or handled for many months, some consumer complaints, via the internet or over telephone lines, in relation to teeth whitening products sold by the Willms Defendants; and

   f.    AtLast has done, and continues to do, all of the aforementioned acts in concert with the Willms Defendants.

114.    On information and belief, AtLast has fulfilled and continues to fulfill (as more generally described above) many orders for teeth whitening products sold by the Willms

115. On information and belief, AtLast either intended, knew, or reasonably should have known that the dazzlesmile mark or name it affixed and continues to affix to teeth whitening products, letters or other stationary sent to tens of thousands of consumers via U.S. mail was infringing or counterfeit because, among other things, of the widespread consumer complaints, returns and confusion that ensued after the first sales of infringing or counterfeit goods were made and because of the very existence and widespread knowledge of the true dazzlesmile teeth whitening system and website.

116. Although the Willms Defendants' scheme is, and was, to confuse consumers and government officials with a dizzying web of multiple websites, numerous names, internationally registered companies and generic "fulfillment" centers, the links are certain: the infringing and counterfeit DazzleSmile and DazzleSmilePro pen applicators and deceptive websites, advertising and sales are coming from, and have come from, AtLast under cover of Farend and Just Think Media, which is a trade name registered in Canada and owned by Defendant 1021018, for which Defendant Jesse Willms is a director and 100% shareholder.

117. But AtLast and the Willms Defendants have not succeeded in their deceptive practices by themselves. Epic, Neverblue and their affiliates and publishers helped them market and sell the infringing and counterfeit teeth whitening products.

118. Following the establishment of the Pirated Landing Pages, many of Epic's affiliates' and publishers' advertisements and web pages that formerly directed web traffic to Plaintiffs' http://www.dazzlesmile.com website or its extensions began directing web traffic to

the Pirated Landing Pages and later — shortly after dazzlesmile sent a cease and desist letter to

several of the defendants — to http://www.premiumwhitepro.com and

http://www.premiumwhitemax.com. These Epic advertisements for the infringing websites

contained Epic redirects to landing pages for the infringing websites that contained an Epic firing

pixel. These Epic advertisements still used the dazzlesmile mark or name, even though they

were still redirecting consumers to the Pirated Landing Pages and later to

http://www.premiumwhitepro.com and http://www.premiumwhitemax.com.

119.    Epic and its affiliates had seamlessly switched from advertising legitimate

dazzlesmile products to advertising other teeth whitening products that openly, deceptively and

without authorization used the dazzlesmile mark and name.

120.    On information and belief, Epic worked closely with the Willms Defendants or

their affiliates to design and create the infringing, deceptive advertising campaign that used the

dazzlesmile mark or name.

121.    At a minimum, Epic received copies of the infringing advertisements, Pirated

Landing Pages and/or Pirated Marketing Sites from the Willms Defendants, their affiliates or

Epic's affiliates, prior to or after their use, analyzed them, and approved their use. And in doing

so, Epic either knew, or should have known, that the advertisements, Pirated Landing Pages

and/or Pirated Marketing Sites were infringing.

122.    Later in time, the Willms Defendants began working with Neverblue and its

affiliates to run a similar infringing advertising and marketing campaign for counterfeit,

infringing or competing teeth whitening products.

123.    In doing so, and on information and belief, Neverblue and the Willms Defendants worked closely with the Willms Defendants or their affiliates to design and create the infringing, deceptive advertising campaign that used the dazzlesmile name or mark.

124.    At a minimum, Neverblue had constructive or actual notice of the true dazzlesmile teeth whitening system, yet nonetheless received copies of the infringing advertisements, Pirated Landing Pages and/or Pirated Marketing Sites from the Willms Defendants their affiliates prior to or after their use, analyzed them and approved their use.  And in doing so, Neverblue either knew, or should have known, that the advertisements, Pirated Landing Pages and/or Pirated Marketing Sites were infringing.

125.    In creating the Pirated Landing Pages and Pirated Marketing Sites, the Willms Defendants, their affiliates or the affiliates of Epic and Neverblue copied and replicated a substantial portion of dazzlesmile's copyrighted www.dazzlesmile.com website and trial offer landing pages, including verbatim text and the general layout of dazzlesmile's trial offer landing pages, such as fonts, sizes and colors of the texts, and placement of links.

126.    On information and belief, the Willms Defendants, Epic and Neverblue knew, approved of and allowed these infringing advertisements and websites to be created and used, as they were resulting in a large revenue stream because, among other things, the infringing advertisements used deceptive practices and techniques, several of which dazzlesmile had refused to use when previously pressed by Epic.

127.    For a significant period of time, searches for "dazzlesmile" on yahoo.com, google.com, ask.com, and bing.com returned a number of paid link advertisements which either used the dazzlesmile mark or name in the keywords or in the advertising copy or else purported

128.    Clicking on those paid link advertisements redirected a user through a series of website redirects, some of which contained information in their URL's that the marketing campaign for the infringing websites and products was being run through Epic or Neverblue, and the HTML source code for the infringing websites showed an Epicor Neverblue firing pixel.

129.    Thus, a consumer on a Pirated Marketing Site who clicked on a link to buy a "DazzleSmile," "DazzleSmilePro" or similarly infringing teeth whitening product or otherwise sign up for a "trial" or "free trial" of such products, would be redirected through a series of websites or website redirect hyperlinks operated, owned or controlled by Epic or Neverblue to the Pirated Landing Pages, where the infringing sale would be consummated.

130.    Epic, Neverblue and the Willms Defendants and their affiliates unlawfully used, and continue to unlawfully use to this day, the dazzlesmile mark or name in a number of ways, including, but not limited to:

a.    in SPAM email, and through search engine optimization using embedded meta-tags and other methods;

b.    by purchasing keywords for some combination of "dazzle," "smile" and "dazzlesmile" for sponsored links in search engines' advertising programs, such as Google's AdWords or AdSense programs;

c.    through internet and behavior advertising methods, such as banner ads and affiliated marketing programs that contain the dazzlesmile mark or name;

d.    by using the dazzlesmile mark or name in domain names, titles or

32

webpage addresses themselves;

  e. by "astroturfing," or by using the dazzlesmile mark or name in blogs and on other web forums to make it appear that there was a grassroots following for their infringing products when in fact there was no grassroots following but instead a marketing campaign; and

  f. by generally using the dazzlesmile mark or name to lure customers to purchase their other competing, infringing and counterfeit products.

131. Epic, Neverblue, the Willms Defendants, AtLast and their affiliates have no right to use the dazzlesmile mark or name in connection with their business or commercial activities.

132. Epic, Neverblue, the Willms Defendants and their affiliates also used the dazzlesmile mark or name throughout their various websites without the permission of Optimal or dazzlesmile.

133. Epic, Neverblue and the Willms Defendants know that they and their advertising affiliates and publishers have used, and are still using, the dazzlesmile mark and name or colorable imitations of the dazzlesmile mark and name without the consent of Optimal or dazzlesmile.

134. The replicated use of the dazzlesmile mark or name, copyrighted text and images lead, and still leads, consumers to believe that they were or are purchasing dazzlesmile's widely recognized, high-quality teeth whitening product when in fact they were not.

135. The Willms Defendants, their affiliates and the affiliates of Epic and Neverblue simply copied the text and images from dazzlesmile's website without permission.  Thus, many

of the representations on the websites of the Willms Defendants, their affiliates or the affiliates

of Epic and Neverblue were patently false and likely to mislead the consuming public.

136.    At all times relevant to this action, including when Epic, Neverblue, the Willms

Defendants, AtLast and their affiliates first stole the dazzlesmile mark and name and commenced

their commercial use of the mark and name on advertisements and on teeth whitening products,

Epic, Neverblue, the Willms Defendants and AtLast knew, or reasonably should have known, of

the prior adoption and widespread commercial use of the legitimate dazzlesmile mark, name and

website that Plaintiffs presently own, and these defendants knew, or reasonably should have

known, of the valuable goodwill and reputation acquired by Plaintiffs in connection with the

dazzlesmile mark, name, website and products.

137.    Indeed, upon information and belief, Epic gave the confidential information it had

previously learned from the short-lived yet successful dazzlesmile advertising campaign to its

affiliates or to the Willms Defendants for their use, or knowingly allowed its affiliates or the

Willms Defendants to copy and use that information without objection.  Furthermore, Epic and

its other publishers and affiliates used that information in the Willms Defendants' deceptive

advertising campaign.

138.    The infringement of Epic, Neverblue, the Willms Defendants and their affiliates

would not work without participation from various, legitimate companies and enterprises (such

as Google, Yahoo!, MSN.com, Bing and other search engine providers and Internet advertising

networks, such as the MSN and Yahoo! Portals) who further that infringement and who knew,

know or reasonably should known of the infringement.  These entities sell keywords such as

"dazzlesmile" and "dazzle smile" to Epic, Neverblue, the Willms Defendants and their affiliates.

Thus, when a customer searches or searched for "dazzlesmile" or "dazzle smile," on a search engine such as Google, Yahoo, MSN, Bing, or Ask, the infringing and confusing websites of Epic, Neverblue, the Willms Defendants and their affiliates show up, or showed up, as sponsored search results, often with site names that contained or contain some combination of the words "dazzle" and "smile" or the precise term "dazzlesmile" and thus were infringing.

139.    Before and even after dazzlesmile sent a cease and desist letter to Google, Yahoo!, and Microsoft, and filed the original Verified Complaint, searches on those Defendants' websites for "dazzlesmile" or "dazzle smile" provided sponsored search results directing consumers to infringing websites, thus creating actual consumer confusion, indicating that Defendants Google, Yahoo! and Microsoft have continued allowing Epic, Neverblue, the Willms Defendants and their affiliates to bid on the keywords "dazzlesmile" and "dazzle smile" in order to confuse and misdirect consumers.

140.    Internet searches also provide numerous results directing consumers to complaints about "dazzlesmile," which are in fact complaints about the deceptive and infringing actions of Epic, Neverblue, the Willms Defendants, AtLast and their affiliates, thereby further ruining the dazzlesmile mark, name and website.

## PLAINTIFFS' EFFORTS TO STOP THE INFRINGEMENT

141.    On October 19, 2009, after learning of and investigating the blatant theft and reproduction of its website by the Willms Defendants, Optimal and dazzlesmile immediately sent a cease and desist letter to Epic, Farend, Google, Inc., Yahoo! Search Marketing, and Microsoft Advertising/MSN/Bing.

142.    While the Willms Defendants initially took down the landing pages for the websites that contained blatant, unauthorized reproductions of the dazzlesmile mark or name in their URL, Epic, Neverblue and the Willms Defendants continued to use affiliate and publisher advertisements using the dazzlesmile mark or name to deceptively direct traffic to, among others, their websites http://www.premiumwhitepro.com and http://www.premiumwhitemax.com by using the dazzlesmile mark or name in their advertisements.

143.    To this day, Pirated Marketing Sites still exist and use the dazzlesmile mark or name and redirect consumers, via Epic and Neverblue redirects, to websites selling competing teeth whitening products.

## HARM TO CONSUMERS AND PLAINTIFFS

144.    From July 1, 2009 to the date of this First Amended Verified Complaint, dazzlesmile has received **over 15,000** customer service calls and emails from consumers who thought they had purchased legitimate dazzlesmile products from dazzlesmile, but in fact had not.  The overwhelming majority of these consumers were trying to reverse charges made against their debit or credit card accounts after purchasing products from the Willms Defendants as a result of the advertisements, representations and business practices set forth herein.

145.    In addition, dazzlesmile has received scores of product returns from customers of the Willms Defendants' websites.  dazzlesmile received on average approximately five (5) to ten (10) returns per day for many months.  Those customers were clearly confused about the source and origin of their goods, as they returned the goods to dazzlesmile, not to AtLast and the Willms Defendants.

146.    This actual confusion no doubt occurred in many instances because, as detailed above, the goods themselves or the stationary or letter accompanying the goods from the Willms Defendants actually contained the dazzlesmile mark or name.  To be clear, in those instances, the goods, stationary or letter from the Willms Defendants or AtLast containing the dazzlesmile mark or name did not originate in any way from Optimal or dazzlesmile and were not in any way authorized or created by Optimal or dazzlesmile.  Those were bald lies and counterfeits.

147.    In addition, the Willms Defendants, with the assistance of AtLast, Epic, Neverblue and their publishers and affiliates, created a confusing array of websites and information that failed to clearly offer or identify the Willms Defendants or AtLast as the source or owner of the goods and that failed to offer customer service that responded to complaints or allowed for the return of products.

148.    On information and belief, at times AtLast, the Willms Defendants or their agents knowingly or intentionally directed disgruntled consumers to call or otherwise contact the real dazzlesmile customer service or told disgruntled consumers to return the products via U.S. mail to the real dazzlesmile address in Utah.

149.    The confusion, deception and lack of information caused by Epic, Neverblue, AtLast, the Willms Defendants and their affiliates regarding the source and ownership of the Willms Defendants' goods and how to cancel or return products was intentional and willful and was designed to, and in fact did, deflect the attention of thousands of disgruntled consumers to Plaintiffs, who in reality have no relation whatsoever to the Willms Defendants or their products.

150.    Moreover, many of the goods sold to consumers by the Willms Defendants and shipped to consumers by AtLast were of a lesser and different quality than the dazzlesmile teeth

whitening system.  For example, the pen shaped gel applicator from the Willms Defendants is

hydrogen peroxide based and can burn, and apparently has burned, the gums of consumers.

151.    In addition, the goods sold to consumers by the Willms Defendants and shipped

to consumers by AtLast did not contain the disclosures required by the FDA and do not appear to

have been manufactured in an FDA approved manner, despite the goods being passed off as

dazzlesmile goods and allegedly of dazzlesmile quality.  Again, legitimate dazzlesmile goods

and products, by contrast, contain, and contained, the required FDA disclosures.

152.    Plaintiffs are informed and believe that AtLast and the Willms Defendants

knowingly and intentionally created confusion, or knowingly and intentionally misled

consumers, regarding the source and customer service information of their goods to delay the

return of their products by consumers by deflecting and directing their concerns to dazzlesmile

and its customer service.  This is because the Willms Defendants assert that they are somehow

justified in continuing to charge the debit or credit cards of consumers for automatic renewals

until their products are *successfully* returned to them or until the customers are able to actually

notify them of the desire to cancel.

153.    The unauthorized use of the dazzlesmile mark and name has created and will

continue to create actual confusion among thousands, if not tens of thousands, of consumers as to

the source of the teeth whitening products they purchased as well as to where they should return

their product(s) and whom they should inform that they wish to discontinue automatic

shipments.

154.    dazzlesmile has also received letters of inquiry from numerous states attorneys

general regarding consumer confusion and the misrepresentations made by Epic, Neverblue and

155.    And many news outlets have run special or investigative reports describing how "dazzlesmile" or "dazzle smile" misled or deceived consumers or was a target of consumer complaints to state attorneys general, despite the "real" dazzlesmile having sold no products to those disgruntled consumers.

156.    Failing to prohibit Epic, Neverblue, the Willms Defendants, AtLast and their affiliates from continuing to use the dazzlesmile mark and name will result in continued consumer confusion as well as the inability of consumers to cancel their orders and stop their credit cards from being charged by the Willms Defendants and will allow Epic, Neverblue AtLast and their affiliates to continue to reap profits from payments for deceptively obtained orders.

157.    Epic, Neverblue, the Willms Defendants, At Last and their affiliates profit, and have profited, from this mass consumer confusion because the confusion allows the Willms Defendants to continue charging debit and credit cards of consumers who want to cancel but cannot because they are confused as to the source of their teeth whitening product, thereby generating revenue with which the Willms Defendants can pay Epic and Neverblue for the ill-gotten CPAs and orders and AtLast for packaging and distributing the products and then Epic and Neverblue can pay their affiliates.

158.    In addition, the conduct of Epic, the Willms Defendants and AtLast as described herein has significantly disrupted and damaged Plaintiffs' businesses and greatly diminished the value of their assets.

159.    Indeed, the conduct of Epic, Neverblue, the Willms Defendants, AtLast and their affiliates has, in the span of just a few months, destroyed the dazzlesmile mark, name, website and goodwill.

160.    Most, if not all, of the consumers who purchased and received teeth whitening products through or from AtLast and the Willms Defendants because of the practices discussed herein are likely lost forever to dazzlesmile.

161.    Those consumers, as evidenced by the thousands of calls to dazzlesmile, are confused, mad and unhappy with the confusion surrounding dazzlesmile.  They have no intent or desire to purchase goods from dazzlesmile, regardless of dazzlesmile's superior products and customer service.

162.    Thus, dazzlesmile has lost thousands of potential customers because of this conduct and will never experience the typical repurchase of teeth whitening products that it would have had with many of those potential customers.

163.    But for the actions of Epic, Neverblue, the Willms Defendants, AtLast and their affiliates, many of those confused consumers likely would have purchased teeth whitening products from dazzlesmile.

164.    Furthermore, many of dazzlesmile's customers, and likely their neighbors, family and friends, as well as a large segment of the consuming public and several state attorneys

general now think dazzlesmile is part of the fraudulent enterprise of Epic, Neverblue, the Willms

Defendants, AtLast and their affiliates when in fact there is no connection whatsoever.

165.    Although the Willms Defendants have established new websites, including, but

not limited to, http://www.premiumwhitepro.com and http://www.premiumwhitemax.com, they

continue to use the dazzlesmile mark and name as keywords for individuals who search for teeth

whitening products on internet search engines.  And Epic and Neverblue are continuing to

facilitate the Willms Defendants' use of the dazzlesmile mark and name through their advertising

and related efforts with publishers and affiliates.

166.    This loss of goodwill will lead to difficulty in retaining existing customers as well

as obtaining new customers.  If a consumer now searches for dazzlesmile on a search engine, the

vast majority of the responsive websites associate dazzlesmile with "scams," "fraud," unfair

business practices and consumer complaints.  But the "scams," "fraud," unfair business practices

and consumer complaints actually relate to the conduct and actions of Epic, Neverblue, the

Willms Defendants, AtLast and their affiliates, not Plaintiffs.

167.    dazzlesmile has also made efforts to continue to market and sell the actual

dazzlesmile teeth whitening system, but has met with little success given the tarnished and

destroyed dazzlesmile mark, name and website.  Further efforts to attempt to sell actual

dazzlesmile teeth whitening products are, at this time, futile and a waste of resources.

168.    dazzlesmile also has a large amount of inventory of teeth whitening products that

it is now unable to effectively market or sell as a result of the conduct of Epic, the Willms

Defendants and AtLast.

169.    In addition, the 15,000 plus consumer calls and scores of returned products – all of which related to products from AtLast and/or the Willms Defendants and not dazzlesmile – has caused dazzlesmile to dedicate much time, effort and resources to overhead and administration completely unrelated to its own products and as a direct consequence of the actions of Epic, Neverblue, the Willms Defendants, AtLast and their affiliates.

170.    The past and ongoing damage to Plaintiffs' business and the dazzlesmile mark and name is and has been irreparable and severe.  This small, legitimate business is now on the verge of insolvency because of the conduct and actions set forth herein.

171.    All of the harm and damages to Plaintiffs complained of in this First Amended Verified Complaint occurred apart and separate from Epic's short-lived dazzlesmile advertising campaign, and most, if not all, arose after Plaintiffs officially stopped Epic's dazzlesmile advertising campaign and terminated their relationship with Epic on June 29, 2009.

172.    Monetary remedies are insufficient to provide redress against the offending conduct, should it be allowed to continue.  dazzlesmile's relationship with consumers and dazzlesmile's goodwill in the community will continue to be injured if the offending conduct is not stopped immediately.

173.    Plaintiffs seek damages and injunctive relief preventing Epic, Neverblue, the Willms Defendants, AtLast and their affiliates from engaging in any further violation of Plaintiffs' rights as well as an order of impoundment and seizure.

## FIRST COUNT
### Federal Unfair Competition (15 U.S.C. §1125(a))
(Against Epic, Neverblue, the Willms Defendants, AtLast and Does)

174.    Plaintiffs incorporate all of the allegations in this First Amended Verified Complaint as though fully set forth in this cause of action.

175.    The dazzlesmile mark, name and business are entitled to protection from unfair competition under the Lanham Act.

176.    The actions by Epic, Neverblue, the Willms Defendants, AtLast and their affiliates detailed herein constitute unfair competition in violation of the Federal Lanham Act, 15 U.S.C. §1125(a).

177.    Epic, Neverblue, the Willms Defendants, AtLast and their affiliates have attempted to sell, and have sold, their goods and services by making false and deceptive representations to the consuming public generally and to dazzlesmile's existing and potential customers more specifically.

178.    Epic, Neverblue, the Willms Defendants, AtLast and their affiliates have made each of the false or deceptive statements with the intent of deceiving consumers into believing there is a relationship, affiliation, or sponsorship between dazzlesmile and the Willms Defendants, their products and their websites when in fact there is not.

179.    The false and misleading statements of Epic, Neverblue, the Willms Defendants, AtLast and their affiliates regarding dazzlesmile have not just created a likelihood of confusion among consumers, they have created widespread, massive amounts of actual confusion that have drawn considerable media attention and attention from several state attorneys general.

180.    Epic, Neverblue, the Willms Defendants, AtLast and their affiliates have used and are using words, terms, names, symbols, devices, combinations thereof, false designations of origins, and false and misleading descriptions and representations of fact in connection with the sale, offer for sale, packaging, distribution and advertising of the Willms Defendants' goods.

181.    Epic, Neverblue, the Willms Defendants and their affiliates used the Pirated Landing Pages and Pirated Marketing Sites, among others, in commerce that contained, and contain, the dazzlesmile mark and name, including in sponsored link advertisements and on websites that compete, and competed, directly with the official http://www.dazzlesmile.com website and products.

182.    The Willms Defendants and AtLast have used the dazzlesmile mark and name without authorization or consent on actual products, letterhead, packaging and other stationary accompanying their teeth whitening products sold to tens of thousands of consumers.

183.    The actions of Epic, Neverblue, the Willms Defendants, AtLast and their affiliates in these regards and the commercial advertising, promotion, packaging and distribution of the Willms Defendants' goods misrepresents the nature, characteristics and qualities of the Willms Defendants' goods.

184.    As a proximate result of the conduct of Epic, Neverblue, the Willms Defendants, AtLast and their affiliates, Plaintiffs have been damaged in an amount to be proven at trial, but far in excess of $1,000,000, including, but not limited to, consequential damages.  Plaintiffs are entitled to recover all of the profits of Epic, Neverblue, the Willms Defendants, AtLast and their affiliates from their actions detailed herein as well as all of Plaintiffs' costs and reasonable attorneys' fees associated with this action.

185.    At all material times, Epic, Neverblue, the Willms Defendants, AtLast and their affiliates acted in bad faith, willfully, intentionally, oppressively and maliciously toward Plaintiffs, with intent to injure Plaintiffs, thereby entitling Plaintiffs to treble damages in an amount to be determined at trial.

186.    The above described acts of Epic, Neverblue, the Willms Defendants, AtLast and their affiliates have caused and are continuing to cause irreparable injury to dazzlesmile, for which dazzlesmile has no adequate remedy at law, and they will continue to offend unless enjoined.

187.    Pursuant to 15 U.S.C. §1125(b), Plaintiffs request that any goods destined to AtLast or the Willms Defendants marked or labeled with the dazzlesmile mark or name that are imported into the United States or admitted to entry at any customhouse of the United States be refused entry, seized and impounded.

## SECOND COUNT
### Federal Trade Name Infringement (15 U.S.C. §1125(a))
(Against Epic, Neverblue, the Willms Defendants, AtLast and Does)

188.    Plaintiffs incorporate all of the allegations in this First Amended Verified Complaint as though fully set forth in this cause of action.

189.    The dazzlesmile name is a trade name that is entitled to protection from infringement under the Lanham Act.

190.    Epic, Neverblue, the Willms Defendants, AtLast and their affiliates have used and are currently using, and used for several months, the dazzlesmile name or confusingly similar marks, names, terms or colorable imitations of the dazzlesmile name in commerce without permission and such use constitutes infringement of the dazzlesmile name.

191.    Epic, the Willms Defendants and AtLast have created a likelihood of mistake and confusion, as well as actual mistake and confusion, with the dazzlesmile name in the relevant marketplace to Plaintiffs' detriment and damage, thereby constituting infringement of Plaintiffs' trade names pursuant to 15 U.S.C. §1051 et seq., particularly §1125, in that Epic, Neverblue, the Willms Defendants, AtLast and their affiliates are using in commerce counterfeit or colorable imitations of Plaintiffs' dazzlesmile trade name in connection with the sale, offering for sale, distribution, or advertising of the Willms Defendants' goods.

192.    Plaintiffs never consented to, authorized or granted a license to Neverblue, the Willms Defendants, AtLast or their affiliates to use the dazzlesmile mark or name to promote, sell, package or distribute the Willms Defendants' products or in any other way whatsoever.

193.    Although Optimal did consent to Epic running the dazzlesmile advertising campaign in May and June of 2009, that authorization terminated on June 29, 2009 and that authorization <u>never</u> extended to allowing the use – in any fashion – of the dazzlesmile mark or name in connection with the promotion or advertising of the products of another person or entity, such as the Willms Defendants.

194.    The infringement of Epic, Neverblue, the Willms Defendants, AtLast and their affiliates is and has been willful and deliberate.

195.    Because of the infringing use of the dazzlesmile name or colorable imitations of the dazzlesmile name by Epic, Neverblue, the Willms Defendants, AtLast and their affiliates, actual consumer confusion has occurred and is likely to continue occurring, and a large number of consumers are likely to continue to be deceived, confused or mistaken into thinking the

Willms Defendants' goods are, or were, endorsed by, sponsored by or somehow affiliated with Plaintiffs, or are, or were, actually Plaintiffs' goods.

196.    The actions of Epic, Neverblue, the Willms Defendants, AtLast and their affiliates are, and were, a willful and wanton attempt to obtain the benefits of the goodwill and reputation that Plaintiffs have established in their business and in the dazzlesmile mark and name.

197.    As a proximate result of the conduct of Epic, Neverblue, the Willms Defendants, AtLast and their affiliates described herein, Plaintiffs have been damaged in an amount to be proven at trial, but far in excess of $1,000,000, including, but not limited to, damages, lost profits, diminution in the value of goodwill, injury to business reputation and other consequential damages, and that it is entitled to recover all of the profits from their actions detailed herein.

198.    The above described acts of Epic, Neverblue, the Willms Defendants, AtLast and their affiliates have caused and are continuing to cause irreparable injury to Plaintiffs, for which Plaintiffs have no adequate remedy at law, and they will continue to do so unless enjoined.

### THIRD COUNT
**Federal Trademark and Trade Name Dilution (15 U.S.C. §1125(c))**
(Against Epic, Neverblue, the Willms Defendants, AtLast and Does)

199.    Plaintiffs incorporate all of the allegations in this First Amended Verified Complaint as though fully set forth in this cause of action.

200.    As a result of the duration and extent of use of the dazzlesmile mark, name and website, the investment of substantial time, energy, money and other resources to develop the dazzlesmile mark, name and website, the duration and extent of the advertising and publicity of the dazzlesmile mark, the geographical extent of the distribution of the same, the superior quality of the dazzlesmile products and services, and the degree of recognition of the dazzlesmile mark,

name and website, the dazzlesmile mark and name is fanciful, famous and incontestable, and is inherently arbitrary, fanciful, distinctive or suggestive, or has otherwise acquired secondary meaning in the relevant channels of trade that refer to dazzlesmile.

201.    Epic, Neverblue, the Willms Defendants, AtLast and their affiliates have commenced use in commerce of identical marks or names or at least marks confusingly similar to the dazzlesmile mark and name in connection with the promotion, advertising, offering for sale and sale of teeth whitening products or other use in commerce as an indicator of origin of goods.

202.    Epic, Neverblue, the Willms Defendants, AtLast and their affiliates knowingly, intentionally and willfully used the dazzlesmile mark and name to deceive consumers into believing they were dazzlesmile or represented dazzlesmile.

203.    Epic, Neverblue, the Willms Defendants, AtLast and their affiliates are or were using the dazzlesmile mark and name to steal dazzlesmile's actual and potential customers.

204.    Plaintiffs never consented to, authorized or granted a license to Neverblue, the Willms Defendants, AtLast or their affiliates to use the dazzlesmile mark or name to promote, sell, package or distribute the Willms Defendants' products or in any other way whatsoever.

205.    Although Optimal did consent to Epic running the dazzlesmile advertising campaign in May and June of 2009, that authorization terminated on June 29, 2009 and that authorization never extended to allowing the use – in any fashion – of the dazzlesmile mark or name in connection with the promotion or advertising of the products of another person or entity, such as the Willms Defendants.

206.     The use of the dazzlesmile mark and name by Epic, Neverblue, the Willms

Defendants, AtLast and their affiliates, including, but not limited to, in relation to the sale and

marketing of teeth whitening products, tends to dilute and has, in fact diluted, the famous nature

of the dazzlesmile mark and trade name.

207.     As a proximate result of the conduct of Epic, Neverblue, the Willms Defendants,

AtLast and their affiliates described herein, Plaintiffs have been damaged in an amount to be

proven at trial, but far in excess of $1,000,000, including, but not limited to, damages, lost

profits, diminution in the value of goodwill, injury to business reputation and other consequential

damages, and that it is entitled to recover all of the profits from their actions detailed herein.

208.     The above described acts of Epic, Neverblue, the Willms Defendants, AtLast and

their affiliates have caused and are continuing to cause irreparable injury to Plaintiffs, for which

Plaintiffs have no adequate remedy at law, and they will continue to do so unless enjoined.

**FOURTH COUNT**
**Federal Cyber Piracy (15 U.S.C. §1125(d))**
(Against the Willms Defendants and Does)

209.     Plaintiffs incorporate all of the allegations in this First Amended and Verified

Complaint as though fully set forth in this cause of action.

210.     The Willms Defendants, their affiliates and the affiliates of Epic and Neverblue

have registered and used in bad faith, and continue to use in bad faith, domain names that are

confusingly similar to or dilutive of the dazzlesmile mark, name and website.

211.     The Willms Defendants, their affiliates and the affiliates of Epic and Neverblue

have no intellectual property rights or any other rights in the dazzlesmile mark or name or any

variations thereof.

212.     The Willms Defendants, their affiliates and the affiliates of Epic and Neverblue have not used their respective domain names in connection with a bona fide offering of goods or services.

213.     The Willms Defendants, their affiliates and the affiliates of Epic and Neverblue have not made non-commercial or fair use of the dazzlesmile mark and name in the web sites found at the respective domain names.

214.     The Willms Defendants, their affiliates and the affiliates of Epic and Neverblue have intentionally diverted Plaintiffs' customers to their respective domain names where they sold those customers teeth whitening products, often with labels, stationary or letters that used the dazzlesmile mark and name without authorization.

215.     The actions of the Willms Defendants, their affiliates and the affiliates of Epic and Neverblue have harmed the goodwill associated with the dazzlesmile mark and name and will continue to do so unless enjoined.

216.     Pursuant to 15 U.S.C. §1125(d), Plaintiffs are entitled to an order forfeiting and canceling the Pirated Landing Pages, the Pirated Marketing Sites and similar sites and further enjoining the Willms Defendants, their affiliates and the affiliates of Epic and Neverblue from using the domain names:  http://www.dazzlesmilepro.com; http://www.dazzlesmilepure.com; http://www.dazzlesmilenow.com; http://www.freedazzlesmile.com; http://www.dazzlesmile.org; http://wwwdazzlesmile.net; http://www.dazzlesmile.biz; http://www.dazzlesmile.info; http://www.dazzlesmilereviews.com; http://www.celebritydazzlesmile.com; http://www.dazzlesmilefreetrial.com; http://www.dazzlesmilefreetrial.info and any other domain

names owned or controlled by the Willms Defendants, their affiliates and the affiliates of Epic

and Neverblue that are confusingly similar to or dilutive of the dazzlesmile mark or name.

217.    As a proximate result of Defendants' conduct described herein, Plaintiffs have

been damaged in an amount to be proven at trial, but far in excess of $1,000,000, including, but

not limited to, damages, lost profits, diminution in the value of goodwill, injury to business

reputation and other consequential damages, and that it is entitled to recover all of Defendants'

profits from their actions detailed herein.

218.    At all material times, the Willms Defendants, their affiliates and the affiliates of

Epic and Neverblue have acted in bad faith, oppressively and maliciously toward Plaintiffs, their

customers and the consuming public in general, with intent to injure Plaintiffs and consumers,

thereby entitling Plaintiffs to treble damages in an amount to be determined at trial, including but

not limited to, damages, lost profits and other consequential damages.

### FIFTH COUNT
**False Patent Marking (35 U.S.C. §292)**
(Against Epic, Neverblue, the Willms Defendants, AtLast and Does)

219.    Plaintiffs incorporate all of the allegations in this First Amended Verified

Complaint as though fully set forth in this cause of action.

220.    Plaintiffs bring this case of action under 35 U.S.C. §292(b).

221.    Several publishers and affiliates of Epic, Neverblue and the Willms Defendants,

and possibly the Willms Defendants themselves, had websites that advertised teeth whitening

products along with an express claim that such products were "patented" or used a "patented"

formula.

222.    When a consumer on such a website clicked on link or advertisement to "purchase" the product or to obtain a "trial" or "free trial" of the product, the consumer was redirected via an Epic or Neverblue redirect to a Pirated Landing Page or other landing page of the Willms Defendants selling teeth whitening products, where the consumer would consummate the purchase, "trial" or "free trial."

223.    The teeth whitening products sold in such situations were not in fact patented and did not in fact contain any patented formula.

224.    In doing so, Epic, Neverblue, the Willms Defendants and their affiliates "used in advertising in connection with . . . unpatented article[s] the word 'patent' [and other] word[s] . . . indicating the same is patented, for the purpose of deceiving the public."

225.    Defendants could not genuinely have believed that any patent applied to the products sold by the Willms Defendants.

226.    Defendants wrongfully and illegally advertised patented products which they did not possess and, as a result, have benefited commercially and financially with false statements of patent rights.

227.    Defendants should be fined $500 for each and every such offense, as allowed by 35 U.S.C. §292(a).

## SIXTH COUNT
### Common Law Infringement
(Against Epic, Neverblue, the Willms Defendants, AtLast and Does)

228.    Plaintiffs incorporate all of the allegations in this First Amended Verified Complaint as though fully set forth in this cause of action.

229.   Plaintiffs own and use the dazzlesmile mark and name and enjoy common law rights in Utah and throughout the United States in and to the dazzlesmile mark and name on the marketing and goods set forth herein, and thus these rights are senior and superior to any rights which Epic, Neverblue, the Willms Defendants, AtLast or their affiliates may claim in and to their infringing marketing and products.

230.   The use of the dazzlesmile mark and name by Epic, Neverblue, the Willms Defendants, AtLast and their affiliates is, and was, intentionally designed to mimic dazzlesmile products so as to likely cause confusion regarding the source of the Willms Defendants' products, in that purchasers thereof will likely associate, and in fact have associated, such products with, as originating with, or as approved by Plaintiffs, all to the detriment of Plaintiffs.

231.   As a proximate result of the conduct of Epic, Neverblue, the Willms Defendants, AtLast and their affiliates described herein, Plaintiffs have been damaged in an amount to be proven at trial, but far in excess of $1,000,000, including, but not limited to, damages, lost profits, diminution in the value of goodwill, injury to business reputation and other consequential damages, and that it is entitled to recover all of the profits from their actions detailed herein.

232.   The above described acts of Epic, Neverblue, the Willms Defendants, AtLast and their affiliates have caused and are continuing to cause irreparable injury to Plaintiffs, for which Plaintiffs have no adequate remedy at law, and they will continue to do so unless enjoined.

## SEVENTH COUNT
### Contributory Infringement
(Against All Defendants)

233.    Plaintiffs incorporate all of the allegations in this First Amended Verified Complaint as though fully set forth in this cause of action.

234.    The actions of Defendants described herein, including, without limitation, their knowledge, participation, and inducement of the unauthorized use of the dazzlesmile mark or name and confusingly similar variations thereof by others such as Epic's publishers and affiliates, in commerce to advertise, market and sell teeth whitening products throughout the United States and Utah as well in their packaging and distribution of goods in commerce containing the dazzlesmile mark or name and confusingly similar variations thereof, constitutes contributory infringement in violation of federal law and the common law of the State of Utah.

235.    With full knowledge of Plaintiffs' rights in the dazzlesmile mark or name, Defendants Google, Yahoo! and Microsoft sold to third-party advertisers, publishers, and affiliates the "rights" to use the either the dazzlesmile mark or name or terms confusingly similar to the dazzlesmile mark or name as part of Google's, Yahoo!'s, and Microsoft's search-engine based advertising programs.

236.    When consumers then searched for "dazzlesmile" or dazzle" and "smile," together,  Google's, Yahoo!'s and Microsoft's search engines would provide sponsored links on the top of, or on the side of, the "natural" search results to the infringing websites, Pirated Landing Pages, the Pirated Marketing Sites and/or similarly infringing websites.

237.    Google's, Yahoo!'s and Microsoft's sale of the dazzlesmile mark and name, or terms confusingly similar to them and the infringing websites', Pirated Landing Pages' and/or

the Pirated Marketing Sites' use of the dazzlesmile mark, name or terms confusingly similar to them is and was likely to cause confusion among consumers, and constitutes infringement of Plaintiffs' rights in the dazzlesmile mark and name.

238.    Through their sale of the dazzlesmile mark, name and terms confusingly similar to them to the infringing websites, Pirated Landing Pages and/or the Pirated Marketing Sites, and their encouragement of the sale of keywords that either incorporate the dazzlesmile mark, name or terms confusingly similar to them, Google, Yahoo! and Microsoft, induced the infringing websites, Pirated Landing Pages and/or the Pirated Marketing Sites to infringe the dazzlesmile mark and name and provide these advertisers with aid and material contribution to the infringing websites', Pirated Landing Pages' and/or the Pirated Marketing Sites' direct infringement of the dazzlesmile mark.

239.    Defendants Google's, Yahoo!'s and Microsoft's infringement is willful and reflects their intent to exploit the goodwill and strong brand recognition associated with the dazzlesmile mark and name.

240.    As a proximate result of the conduct of Defendants described herein, Plaintiffs have been damaged in an amount to be proven at trial, including, but not limited to, damages, lost profits, diminution in the value of goodwill, injury to business reputation and other consequential damages, and that it is entitled to recover all of the profits from their actions detailed herein.

241.    The above described acts of Defendants have caused and are continuing to cause irreparable injury to Plaintiffs, for which Plaintiffs have no adequate remedy at law, and they will continue to do so unless enjoined.

**EIGHTH COUNT**
**Vicarious Infringement**
(Against All Defendants)

242.    Plaintiffs incorporate all of the allegations in this First Amended Verified

Complaint as though fully set forth in this cause of action.

243.    Defendants have knowledge, or reasonably should have knowledge, that affiliates,

publishers or marketers are committing trademark infringement and unfair competition.

244.    Defendants profit, and have profited, from the affiliates', publishers' or

marketers' trademark infringement and unfair competition alleged herein.

245.    In addition to the conduct of Epic, Neverblue, the Willms Defendants, AtLast and

their affiliates described herein, the actions of Defendants Google, MSN, and Yahoo! described

above and specifically, without limitation, their knowledge, participation, and inducement of the

unauthorized use of the dazzlesmile mark, name and confusingly similar variations thereof, in

commerce to advertise, market and sell teeth whitening products throughout the United States

and Utah, constitute vicarious infringement in violation of federal law and the common law of

the State of Utah.

246.    Google, Yahoo! and Microsoft all had the right and ability to control the conduct

of Epic, Neverblue, the Willms Defendants and their affiliates by simply refusing to run and be

paid for the clearly infringing keyword-linked advertising.  This was especially true after they

had received actual notice of the infringing activity.

247.    The affiliates', publishers' or marketers' use of the dazzlesmile mark, name or

terms confusingly similar to it as keyword triggers in Google's, Yahoo!'s and Microsoft's search

engine-based advertising program is and was likely to cause confusion among consumers and constitutes infringement of Plaintiffs' rights in the dazzlesmile mark and name.

248.    Google, Yahoo! and Microsoft also received a direct financial benefit from the unfair competition of Epic, Neverblue, the Willms Defendants and their affiliates because they were paid for and derived revenue from keyword-linked advertising associated with the infringement.

249.    As a proximate result of Defendants' conduct described herein, Plaintiffs have been damaged in an amount to be proven at trial, but far in excess of $1,000,000, including, but not limited to, damages, lost profits, diminution in the value of goodwill, injury to business reputation and other consequential damages, and that it is entitled to recover all of Defendants' profits from their actions detailed herein.

250.    The above described acts Defendants have caused and are continuing to cause irreparable injury to Plaintiffs, for which Plaintiffs have no adequate remedy at law, and Defendants will continue to do so unless enjoined.

### NINTH COUNT
**State Unfair Competition and Unfair or Deceptive Business Practices**
(Against Epic, Neverblue, the Willms Defendants, AtLast and Does)

251.    Plaintiffs incorporate all of the allegations in this First Amended Verified Complaint as though fully set forth in this cause of action.

252.    The actions by Epic, Neverblue, the Willms Defendants, AtLast and their affiliates detailed herein constitute unfair competition and are a violation of various state deceptive business practices laws designed to protect consumers from confusion, including without limitation California's statutory prohibition of false advertising, Business and

Professions Code § 17500; the Colorado Consumer Protection Act, COLO. REV. STAT. §6-1-101 *et seq.*; and Utah's Unfair Competition Act, Utah Code Ann. § 13-5a-1 *et seq.*

253.    Epic, Neverblue, the Willms Defendants, AtLast and their affiliates have attempted to sell and have sold, packaged and distributed their goods and services by making false and deceptive representations to Plaintiffs' customers and consumers in general.

254.    The acts of Epic, Neverblue, the Willms Defendants, AtLast and their affiliates falsely represent the source and origin of teeth whitening products and are contrary to honest practice in commercial matters; they amount to the "palming off" of the Willms Defendants' teeth whitening products as those of dazzlesmile's.  Accordingly, their acts constitute unfair competition and deceptive business practices in violation of the state and common laws throughout the country within which they advertised, sold and distributed goods.

255.    The use of Epic, Neverblue, the Willms Defendants, AtLast and their affiliates has been and continues to be in the course of business and is commercial in nature.

256.    Epic, Neverblue, the Willms Defendants, AtLast and their affiliates have made each of the false or deceptive statements with the intent of deceiving consumers of the relationship, affiliation or sponsorship between dazzlesmile and the Willms Defendants and their websites and the Pirated Marketing Sites.

257.    Epic, Neverblue, the Willms Defendants, AtLast and their affiliates have made each of the false or deceptive statements with the intent of undercutting Plaintiffs' legitimate business involving teeth whitening products.

258.     The false and misleading statements of Epic, Neverblue, the Willms Defendants, AtLast and their affiliates regarding Plaintiffs will create a likelihood of confusion among consumers and has in fact created substantial actual confusion among consumers.

259.     The use by Epic, Neverblue, the Willms Defendants, AtLast and their affiliates is an unlawful violation of various state and federal laws, as alleged herein.  Their use is unfair, as they have gained a competitive advantage by misleading and confusing dazzlesmile actual or potential customers and other consumers.  The use by Epic, Neverblue, the Willms Defendants, AtLast and their affiliates is fraudulent, as they have gained such advantage by presenting false and deceptive information to dazzlesmile actual and potential customers and other consumers.

260.     The use by Epic, Neverblue, the Willms Defendants, AtLast and their affiliates is an infringement of Plaintiffs' trademark and trade name rights associated with the dazzlesmile mark and name.

261.     The actions of Epic, Neverblue, the Willms Defendants, AtLast and their affiliates have materially damaged, and are materially damaging, Plaintiffs' intellectual property.

262.     Plaintiffs are entitled to actual damages, restitution, reasonable attorneys' fees and costs as allowed by the various state laws.

263.     The above described acts of Epic, Neverblue, the Willms Defendants, AtLast and their affiliates have caused and are continuing to cause irreparable injury to Plaintiffs, for which Plaintiffs have no adequate remedy at law, and they will continue to do so unless enjoined.

**<u>TENTH COUNT</u>**
**State Consumer Protection**
(Against Epic, Neverblue, the Willms Defendants, AtLast and Does)

264.    Plaintiffs incorporate all of the allegations in this First Amended Verified Complaint as though fully set forth in this cause of action.

265.    The actions of Epic, Neverblue, the Willms Defendants, AtLast and their affiliates are a violation of various state consumer fraud protection laws designed to protect consumers from fraud and deceptive practices, including without limitation California's statutory prohibition of unfair competition, Business and Professions Code, § 17200; the Colorado Consumer Protection Act, COLO. REV. STAT. §6-1-101 *et seq.*; and Utah's Consumer Sales Practices Act, Utah Code Ann. § 13-11-1 *et seq.*

266.    The fraudulent and misleading advertisements and representations to consumers by Epic, Neverblue, the Willms Defendants, AtLast and their affiliates, including without limitation those described at length herein, are deceptive acts prohibited by laws protecting consumers in the various states.

267.    Epic, Neverblue, the Willms Defendants, AtLast and their affiliates have intentionally, willfully and knowingly committee such deceptive acts.

268.    The deceptive acts of Epic, Neverblue, the Willms Defendants, AtLast and their affiliates are unconscionable and damage the public good.

269.    The use by Epic, Neverblue, the Willms Defendants, AtLast and their affiliates is unlawful, as a violation of various state and federal laws, as alleged herein.

270.    The use by Epic, Neverblue, the Willms Defendants, AtLast and their affiliates is unfair, because it is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

271.    The use by Epic, Neverblue, the Willms Defendants, AtLast and their affiliates is fraudulent, as they have presented false and misleading information to Plaintiffs' actual and potential customers and other consumers, which is likely to deceive and which in fact has deceived.

272.    The actions of Epic, Neverblue, the Willms Defendants, AtLast and their affiliates have damaged, and are damaging, dazzlesmile's existing and prospective business relations with customers.

273.    Plaintiffs are entitled to actual damages, in an amount far in excess of $1,000,000, to be determined at trial, and costs and attorneys' fees.

274.    The above described acts of Epic, Neverblue, the Willms Defendants, AtLast and their affiliates have caused and are continuing to cause irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law, and they will continue to do so unless enjoined.

## ELEVENTH COUNT
### Misappropriation
(Against Epic, Neverblue, the Willms Defendants, AtLast and Does)

275.    Plaintiffs incorporate all of the allegations in this First Amended Verified Complaint as though fully set forth in this cause of action.

276.    Plaintiffs are the owners of the valuable dazzlesmile mark and name and the goodwill associated therewith by virtue of their investment of substantial time, money and effort.

277.    Epic, Neverblue, the Willms Defendants, AtLast and their affiliates have misappropriated Plaintiffs' intellectual property for their own use, without Plaintiffs' permission, and with no compensation to Plaintiffs.

278.    Epic, Neverblue, the Willms Defendants, AtLast and their affiliates have reaped the benefits of Plaintiffs' creativity and efforts without the same cost that Plaintiffs have incurred in developing the dazzlesmile mark, name, website and business.

279.    Plaintiffs have been damaged and will continue to be damaged as a direct and proximate result of the misappropriation and related efforts of Epic, Neverblue, the Willms Defendants, AtLast and their affiliates.  Plaintiffs are therefore entitled to an award of actual damages to be proven at trial.

280.    The conduct of Epic, Neverblue, the Willms Defendants, AtLast and their affiliates is willful, malicious and undertaken with deliberate disregard for Plaintiffs' rights. Plaintiffs are therefore entitled to an award of exemplary and punitive damages.

### TWELFTH COUNT
**Civil Conspiracy**
(Against Epic, Neverblue, the Willms Defendants, AtLast and Does)

281.    Plaintiffs incorporate all of the allegations in this First Amended Verified Complaint as though fully set forth in this cause of action.

282.    Epic, Neverblue, the Willms Defendants, AtLast and their affiliates, in connection with the conduct described herein, agreed by words and conduct to utilize unlawful and improper means to accomplish an unlawful and improper goal of confusing consumers, stealing customers and income from Plaintiffs, and utilizing Plaintiffs' well-known name and exceptional customer service as a target at which to focus confused or deceived customers.

283.    Numerous unlawful and improper acts were performed by Epic, Neverblue, the Willms Defendants, AtLast and their affiliates, in concert, to accomplish these unlawful purposes.

284.    As a direct and proximate result of such conduct, Plaintiffs have suffered substantial losses and damages.

### THIRTEENTH COUNT
**Fraud**
(Against Epic)

285.    Plaintiffs incorporate all of the allegations in this First Amended and Verified Complaint as though fully set forth in this cause of action.

286.    After Plaintiffs refused to employ the deceptive advertising techniques being demanded by Epic and its publishers and after, but possibly before, Plaintiffs stopped and terminated the Epic dazzlesmile advertising campaign, Epic contrived and implemented a scheme:  (1) to continue using, allowing, approving or encouraging its affiliates, publishers or other advertisers (including, but not limited to, the Willms Defendants) to use or continue using the dazzlesmile mark and name in their advertising campaigns or in the advertising campaigns of others, without Plaintiffs' authorization, knowledge or consent; and (2) to profit greatly from the CPAs and other payments received by Epic for orders by consumers for teeth whitening products that were sold as a result of, or in relation to, advertising campaigns that used the dazzlesmile mark or name in whatever manner those advertisers, publishers and affiliates could generate the most orders.

287.    On information and belief, Epic has attempted to cloak itself with legitimacy by adopting a new name and through purported "compliance" efforts and the like, but, in reality,

Epic, just like "Azoogle" before it, encourages and allows deceptive practices, such as pop-up exit clicks and hidden terms and conditions, because doing so greatly increases its profits. That is why Epic had demanded Plaintiffs utilize more deceptive tactics during the legitimate dazzlesmile advertising campaign prior to the Willms Defendants stealing the dazzlesmile name, mark and website layout.

288.    On information and belief, the likely scheme began after the initial dazzlesmile advertising campaign showed great success in a short period of time and when Plaintiffs expressed, as detailed herein, dissatisfaction with the deceptive tactics of the dazzlesmile advertising campaign being run for Plaintiffs by Epic and when Plaintiffs attempted to legitimize the advertising campaign with efforts that would have reduced consumer confusion and deception, such as requiring the "I Agree" click in relation to the terms and conditions.

289.    The scheme continued, gained momentum and came to fruition after the legitimate dazzlesmile advertising campaign ended and the relationship with Optimal terminated.

290.    The scheme continued when, on information and belief, Epic allowed, encouraged or knowingly or intentionally assisted its other advertisers, publishers and affiliates (including, but not limited to, the Willms Defendants) into using the dazzlesmile mark or name in advertising campaigns, landing pages, advertisements, URLs, blogs and the like in relation to the marketing and selling of teeth whitening products of individuals and entities other than Plaintiffs.

291.    At a minimum, the scheme consisted of Epic knowingly receiving, reviewing and approving of infringing advertisements, landing pages and affiliate pages that were supplied to it by the Willms Defendants or their affiliates.

292.    Given that Epic had helped create and run the "real" dazzlesmile advertising campaign, it had actual and constructive notice of, among other things, the content and protected nature of the dazzlesmile mark, name and website

293.    Epic has profited greatly from the fraudulent advertising campaigns discussed above.  Indeed, based on a market rate of approximately $40 per CPA and upon Plaintiffs having received over 15,000 calls and emails from disgruntled consumers of the Willms Defendants, Epic has probably received well over $400,000 as a result of the scheme.

294.    Epic knew, or reasonably should have known, that the numerous orders and CPAs from advertisers for teeth whitening products for which it received payment after June 29, 2009 were a direct result of deceptive and infringing advertisements that contained or used the dazzlesmile mark or name without permission, authorization, knowledge or consent from Plaintiffs.

295.    The representations by Epic, as more fully detailed throughout this First Amended Verified Complaint, that it would stop the dazzlesmile advertising campaign, that it would protect Plaintiffs' intellectual property, including trademarks and trade names, and that it conducted its advertising campaign and business practices legitimately and fairly and in compliance with various laws and purported policies regarding ethical behavior by its publishers, at the time they were made, were false and materially misleading as evidenced by, among other things, Epic webpage redirects and numerous Epic firing pixels discovered in the HTML source codes of the various infringing and deceptive landing pages, affiliate pages and advertisements. At the very least, Epic made these representations with a reckless disregard for their truth or falsity and failed to exercise reasonable care when it made these representations.

296.    At the time Epic made each of the aforementioned representations, it either knew each such representation was false or it made each such representation recklessly, knowing that Plaintiffs had insufficient knowledge on which to base the representations.

297.    Each of the representations by Epic set forth herein was material to Plaintiffs' decisions, among others, to stop the dazzlesmile advertising campaign and terminate the relationship with Epic without demanding the return or destruction of all of the materials that it previously had provided to Epic or had created jointly with Epic or its publishers or affiliates and without requiring some further assurance that Epic would not use, or allow others to use, the dazzlesmile mark or name in the future.

298.    Plaintiffs were, at all times, unaware of the falsity of such representations, and they did act reasonably in relying thereon because of the seemingly straightforward nature of stopping the dazzlesmile advertising campaign and terminating their relationship with Epic and of Epic thereafter protecting and not disclosing Plaintiffs' intellectual property.

299.    Plaintiffs did, in fact, reasonably rely on such representations and were induced, among other things, to stop the dazzlesmile advertising campaign and terminate the relationship with Epic without demanding the return or destruction of all of the materials that it previously had provided to Epic or had created jointly with Epic or its publishers or affiliates and without requiring some further assurance that Epic would not use, or allow others to use, the dazzlesmile mark or name in the future.

300.    Plaintiffs have been injured and damaged by the fraud and misrepresentations of Epic in an amount to be proven at trial, but far in excess of $1,000,000, plus accrued interest at the highest rate allowed by law, plus punitive damages because the acts and omissions of Epic

were the result of willful and malicious and intentionally fraudulent conduct or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of Plaintiffs.

301.   The above described acts of Epic have caused and are continuing to cause irreparable injury to Plaintiffs, for which Plaintiffs have no adequate remedy at law, and Epic will continue to do so unless enjoined by this Court.

**FOURTEENTH COUNT**
**Racketeering Influenced and Corrupt Practices (18 U.S.C. §1964)**
(Against Epic, Neverblue, the Willms Defendants, AtLast and Does)

302.   Plaintiffs incorporate all of the allegations in this First Amended Verified Complaint as though fully set forth in this cause of action.

303.   At all times relevant to this action, Epic, Neverblue, the Willms Defendants, AtLast, their affiliates and each of them individually were "persons" as that term is defined in Section 1961(3) of RICO, 18 U.S.C. § 1961(3).

304.   At all times relevant to this action, Epic, Neverblue, the Willms Defendants, AtLast and their affiliates acting together, or each of them acting individually or partly together, were an "enterprise" as that term is defined in Section 1961(4) of RICO, 18 U.S.C. § 1961(4), engaged in or affecting trade or commerce.

305.   At all times relevant to this action, Epic, Neverblue, the Willms Defendants, AtLast and their affiliates, and each of them, did willfully and with the purpose to defraud Plaintiffs and consumers, engage in fraudulent conduct, including acts constituting:  (a) mail fraud, in violation of 18 U.S.C. §1341; (b) wire fraud, in violation of 18 U.S.C. §1343; and (c) interstate transportation of money taken by fraud, in violation of 18 U.S.C. § 2314 by engaging in at least the following acts, as more fully detailed above:

a.      Conspiring together, either intentionally, willfully, maliciously, recklessly or knowingly, to copy and steal the dazzlesmile mark and name and landing page layout and substance in order to create infringing advertisements and internet web pages containing infringing advertisements for selling teeth whitening products;

b.      Advertising and selling teeth whitening products over the internet that contained the dazzlesmile mark and name without Plaintiffs' consent, knowledge or authorization;

c.      Advertising and using an auto-ship or "continuity plan" in conjunction with selling teeth whitening product containing the dazzlesmile mark or name without clearly disclosing to consumers that the offer was not in fact "free," but that by signing up to receive the introductory promotion, those consumers were in fact signing up to be auto-shipped additional teeth whitening products; that their credit or debit cards would be automatically billed, without additional notice; and that such charges would continue until the goods were successfully returned, despite the confusion they had created over where and how to return the goods.

d.      Creating labels, packaging and stationary used in teeth whitening products sold over the internet and sent to thousands of consumers via U.S. mail that contained the dazzlesmile mark or name without Plaintiffs' consent, knowledge or authorization;

e.      Intentionally, willfully, maliciously, recklessly or knowingly creating a confusing array of contact information, advertisements and websites in order to deflect, and in fact deflecting, massive amounts of negative consumer feedback, consumer

complaints and consumer cancellations and returns to dazzlesmile as opposed to themselves;

306.    As a result of the foregoing fraudulent activities, Epic, Neverblue, the Willms Defendants, AtLast and their affiliates have engaged in a pervasive pattern of unlawful and unfair business practices, causing harm to Plaintiffs and tens of thousands of consumers.

307.    The fraudulent conduct of Epic, Neverblue, the Willms Defendants, AtLast and their affiliates, as described herein, constitutes a scheme or artifice to defraud Plaintiffs and consumers.

308.    In furtherance of and for purposes of executing the above-described fraudulent and illegal course of conduct and scheme to defraud, Epic, Neverblue, the Willms Defendants, AtLast and their affiliates either individually or in combination with themselves, used and caused to be used the U.S. mail by:

a.    placing and causing to be placed (either by themselves or their affiliates or by consumers) teeth whitening products, letters, stationary, marketing and sales materials, advertisements, agreements and other matters in depositories;

b.    by removing or causing to be removed letters and other mailable matters from depositories, in violation of the mail fraud statute, 18 U.S.C. § 1341;

c.    by auto-shipping, via combination of the internet and U.S. mail, teeth whitening products, letter and other stationary containing the dazzlesmile mark or name to thousands of consumers; and

d.    by encouraging or directing consumers, either expressly or implicitly, to use interstate mail to contact dazzlesmile and attempt to return products or to complain

about billing practices or product quality, when such consumers in fact had no relationship with dazzlesmile.

309.    In furtherance of and for purposes of executing the above-described fraudulent and illegal course of conduct and scheme or artifice to defraud, Epic, Neverblue, the Willms Defendants, AtLast and their affiliates either individually or in combination with themselves, used or caused to be used interstate wire communications to transmit or disseminate false, fraudulent and misleading communications and information, in violation of the wire fraud statute, 18 U.S.C. § 1343. The use by Epic, Neverblue, the Willms Defendants, AtLast and their affiliates of interstate wire facilities included, but is not limited to:

    a.    deceptively advertising various teeth whitening products on the internet through a variety of means, as more fully detailed herein;

    b.    participating in interstate telephone calls directly with consumers regarding infringing or counterfeit dazzlesmile products;

    c.    encouraging or directing consumers, either expressly or implicitly, to use interstate telephone calls or electronic mail to contact dazzlesmile and complain about billing practices or product quality, when such consumers in fact had no relationship with dazzlesmile; and

    d.    auto-billing consumers for products that were auto-shipped to those consumers containing the infringing or counterfeit dazzlesmile mark or name.

310.    In furtherance of and for purposes of executing the above-described fraudulent and illegal course of conduct and scheme or artifice to defraud, Epic, Neverblue, the Willms Defendants, AtLast and their affiliates either individually or in combination with themselves,

311. Each of the numerous mailings, interstate wire communications and interstate transportations that were made in furtherance of the scheme of Epic, Neverblue, the Willms Defendants, AtLast and their affiliates to defraud Plaintiffs and consumers constitute separate and distinct acts of "racketeering activity," as that term is defined in Section 1961(1) of RICO, 18 U.S.C. § 1961(1).

312. The fraudulent and deceptive activities engaged in by Epic, Neverblue, the Willms Defendants, AtLast and their affiliates, and each of them, in advertising and selling infringing or counterfeit teeth whitening products to consumers, in directing disgruntled consumers to Plaintiffs' customer service, and in deflecting complaints and criticisms regarding the products and billing practices to dazzlesmile affect interstate commerce.

313. As alleged herein, Epic, Neverblue, the Willms Defendants, AtLast and their affiliates have caused their affiliated entities to advertise, market, sell and deliver infringing or counterfeit teeth whitening products throughout the United States.

314. By committing such offenses, which victimized Plaintiffs and tens of thousands of consumers, which offenses continue today and are likely to continue in the future, Epic, Neverblue, the Willms Defendants, AtLast and their affiliates, and each of them, have engaged in a "pattern of racketeering activity," as that term is defined in Section 1961(5) of RICO, 18 U.S.C. §1961(5).

315.    At all times relevant to this action, Epic, Neverblue, the Willms Defendants, AtLast and their affiliates, and each of them, have conducted or participated, directly or indirectly, in the management and operation of an "enterprise," as defined in §98; namely, among others, Epic, Farend, Just Think Media, AtLast, the Pirated Landing Pages and/or the Pirated Marketing Sites, through a pattern of racketeering activity, in violation of RICO, 18 U.S.C. § 1962.

316.    At all times relevant to this action, Epic, Neverblue, the Willms Defendants, AtLast and their affiliates, and each of them, have conspired to conduct or participate, directly or indirectly, in the management and operation of an "enterprise," as identified in § 98; namely, among others, Epic, Farend, Just Think Media, AtLast, the Pirated Landing Pages and/or the Pirated Marketing Sites, through a pattern of racketeering activity, in violation of RICO, 18 U.S.C. § 1962.

317.    Plaintiffs (as well as consumers who purchased infringing or counterfeit teeth whitening products) have been injured in their business or property and, therefore, have standing to sue Epic, Neverblue, the Willms Defendants, AtLast and their affiliates and recover damages and the costs of bringing this action under RICO, 18 U.S.C. § 1964(c).

318.    By virtue of their violations of RICO, 18 U.S.C. §1962, Epic, Neverblue, the Willms Defendants, AtLast and their affiliates, and each of them, are jointly and severally liable to Plaintiffs for three times the damages that Plaintiffs suffered as a result of their scheme to defraud.

319.    Plaintiffs have been injured and damaged by the racketeering activities of Epic, Neverblue, the Willms Defendants, AtLast and their affiliates in an amount to be proven at trial,

but far in excess of $1,000,000, plus accrued interest at the highest rate allowed by law, plus treble damages and punitive damages because the acts and omissions of Epic, Neverblue, the Willms Defendants, AtLast and their affiliates were the result of willful and malicious and intentionally fraudulent conduct or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of Plaintiffs.

320.    The above described acts of Epic, Neverblue, the Willms Defendants, AtLast and their affiliates have caused and are continuing to cause irreparable injury to Plaintiffs, for which Plaintiffs have no adequate remedy at law, and they will continue to do so unless enjoined by this Court.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs dazzlesmile, llc, and Optimal Science, LLC pray for judgment as follows:

1.   For a Temporary Restraining Order, Preliminary Injunction and permanent order of this Court restraining and enjoining Defendants;

2.   For a permanent order of this Court declaring that any agreement executed by a consumer as a result of Defendants' wrongful conduct is voidable at the option of the consumer;

3.   For an order allowing limited expedited discovery to more precisely locate and identify the source and extent of infringing and counterfeit goods as well as the identity and number of deceived consumers;

4.   For an order that the United States Marshals or authorized agents of Plaintiffs may seize and impound any and all infringing or counterfeit goods or related materials in

Defendants' possession or control, and alternatively, for an order that Defendants immediately deliver for destruction any and all infringing or counterfeit goods or related materials in Defendants' possession or control, and alternatively, for an order of inspection and photographing of inventory;

5.   For monetary damages far in excess of $1,000,000, in the precise amount to be proven at trial;

6.   For pre- and post-judgment interest at the maximum rate allowed by law or by contract;

7.   For exemplary or punitive damages for the sake of example and by way of punishing some or all of Defendants, in an amount to be proven at trial;

8.   For treble the amount of any damages as described above in the Fourteenth Count under 18 U.S.C. §1964, the precise amount to be proven at trial;

9.   For reasonable attorneys' fees and costs as allowed by the Lanham Act (15 U.S.C. §1117), RICO (18 U.S.C. §1964), state statute or otherwise; and

10. For such other relief as the Court deems just and equitable.

## **<u>JURY DEMAND</u>**

Plaintiffs demand a trial by jury on all causes of action so triable.

DATED this 22nd day of March, 2010.

s/ Jason W. Hardin
Jason W. Hardin
Phillip D. Dracht
FABIAN & CLENDENIN,
  A Professional Corporation
Attorneys for Plaintiffs

## VERIFICATION

Roger LeFevre, in his capacity as Chief Executive Officer and Managing Member of dazzlesmile, llc and Optimal Health Science, LLC, under penalty of perjury, declares:  (1) that dazzlesmile, llc and Optimal Health Science, LLC are the Plaintiffs in the foregoing action; (2) that he has read the foregoing First Amended Verified Complaint and knows the contents thereof; (3) that he believes the factual allegations set forth therein, except those stated to be on information and belief, to be true and correct based on his own personal knowledge and based on documents, records and information compiled by representatives and agents of dazzlesmile, llc and Optimal health Science, LLC; and (4) that he believes the aforementioned documents, records and information compiled by representatives and agents of dazzlesmile, llc and Optimal Health Science, LLC to be accurate.

I declare under penalty of perjury under the laws of the United States of America and the State of Utah that the foregoing is true and correct.

Executed on March 22, 2010.

_____
Roger LeFevre